PATTON'S AD'R.
*vs*
PATTON'S HEIRS.
of such offer if denied.

moval of Cave. And consequently, however strong the proof as to the alledged unsoundness may be, a Court of Equity had no jurisdiction, unless the rule requiring an election, should estop Cave from objecting to the prosecution of the suit in Chancery in the event of an election to dismiss the action on the case. But this was insufficient to authorize a decree for any relief sought by the bill.

The Chancellor cannot put a complainant who has instituted suits at law and in chancery, to his election, before answer filed.

It was irregular to require an election before answer: (*Cooper's Equity*, 275; *Milford's Pleadings*, 199.) And. Abel could not have been rightfully compelled to elect until, by answer or otherwise, Cave had pleaded to the jurisdiction or waived all objection thereto. But he did, in fact, dismiss his action after Cave's answer denying jurisdiction, had been filed—and moreover, it is not certain that the dismission was even a consequence of the rule.

We are, therefore, of the opinion that the premature rule did not essentially operate on the answer or the question of jurisdiction.

For want of apparent jurisdiction, therefore, we feel constrained to approve and affirm the decree of dismission without prejudice.

*Owsley & Goodloe* for appellant: *Monroe* for appellee.

---

CHANCERY.

# Patton's Adm'r, &c. *vs* Patton's Heirs.

## ERROR TO THE CHRISTIAN CIRCUIT.

Case 47.

*October* 13.

*Guardians. Sureties. Equity.*

JUDGE EWING delivered the opinion of the Court.

The case stated.

IN May 1824, William Patton was appointed by the Christian County Court, guardian to his four infant children, who are the defendants in error, and executed bond with David S. Patton, Robert G. Patton, and Mathew Patton, Jr., as his securities. In 1824–5, several sums of money, some slaves and plate, came to the guardian's hands, from the estate of the grand father of the wards. William Patton having died, the wards, by their next

friend and guardian, Patton D. Harrison, filed their bill against David S. Patton, in his own character, as surety and as administrator of their deceased father, and as executor of Mathew Patton, Jr., who had also died, and against David Johnson, and Elizabeth Patton, surviving administrators of Robert G. Patton, who had also died, for an account and settlement of the guardianship, and a decree for the property, and amount of money due them.

<strong>PATTON'S AD'R.</strong><br><em>vs</em><br><strong>PATTON'S HEIRS.</strong>

This case has been managed with great irregularity in the Court below. A decree seems to have been rendered, in August, 1837, and May, 1838, for the same amounts, and both decrees might be enforced against the defendants; for the first is not rendered as an interlocutory decree, or suspended for the report of the commsisioner, except as to the sale of the lots; nor is it set aside by the latter decree, nor does it appear on the face of the latter decree, that it was substituted for the former, or made in lieu of it.

We also think that the father should have been allowed, under the circumstances of this case, for the maintenance, education, &c. of the infants, the *interest* upon their money in his hands, as well as the *use* of their slaves, and that no charge should have been made against his estate during his life, for *interest or hire*, the amount as it appears, being greatly below an amount that would be requisite for their maintenance, &c. Though a father, in the general, is bound to support his children out of his own means; when he is poor, or his means limited, and even in some cases, where his means are abundant, but their income is greater than his, a Court of Equity will allow him to apply their means to their support and education. *Story's Equity*, 2, 577—*Kent's Com.* But after his death, they have a right to interest and the hire of their slaves, so far as they have not received the same. David S. Patton is personally responsible for the sum for which he sold their negro woman Delilah, or her value and interest on the amount. He had no power to sell her, as the administrator of Wm. Patton, deceased—she was no part of his estate.

It is proper in some cases for a father who is <em>guardian</em> for his <em>own children</em>, to be allowed to use their own means for their support and education.

But as Wm. Patton was the *principal* in the guardian bond, his whole estate, real and personal, should be first

A decree against adm'r, the heirs of a <em>guardian</em>,

Offuti *et al.*
vs
Offutt.

and  sureties, where they are all before the court, should direct payment to be made of the real and personal estate of the principal, before payment by sureties.

made liable to the payment of the whole demand due to the wards. It would be subjecting the estates of the sureties to an unnecessary and oppressive burthen, to subject them first to the payment of the demand due to the wards, and afterwards to sell the estate which has devolved upon them from their father, the *principal*, for the indemnification of the sureties. The estate, real and personal, of the guardian, which can be had, should be first sold, and the amount which can be made, ascertained, and a decree rendered against the representatives of the sureties for the residue.

Both the decrees of 1837 and 1838, with the amendment to the latter, are reversed, and cause remanded, that further proceedings may be had not inconsistent with this opinion.

*Owsley & Goodloe* for plaintiff: *Morehead & Reed* for defendants.