JUDGE LINDSAY
delivered the opinion oe the court.
The appellant, Jarret, filed his petition in equity in the McCracken Circuit Court on the 8th day of November, 1866, in which he stated that in the year 1862 he was appointed and qualified as the statutory guardian of Kate P. Pool, a young lady bordering upon womanhood; that his ward owned and possessed unimproved lands and town lots of the value of several thousand dollars, but that the same yielded no rents nor profits whatever. Also, that at the time of his appointment his said ward “ was in need of clothing of all kinds for her comfort' and decent appearance in the circle in which by birth she was entitled to move,” and that he purchased for her such apparel as was necessary and proper considering her estate and condition in society, and also paid money for her board, the whole amounting to the sum of $237.10; that he had settled his accounts with the county court judge of McCracken County, and that his said expenditures were approved. Said settlement shows that his ward had no personal estate whatever. He further stated that his ward had intermarried with one ¥m. Andrews, who had taken possession of her estate, and had sold about one thousand three hundred dollars worth of the same, and reduced the proceeds to possession.
Andrews having refused to reimburse him on account of his said expenditures for the benefit of his wife, he brought this suit against them both, and sought to have such portion of the wife’s lands as might be necessary subjected to the *313 payment of the same. Andrews answered, controverting the liability of himself or his wife, or of her estate to the payment of Jarret’s claim, but admitted the same to be just. Jarret demurred to his answer, and the demurrer, having been carried back to the petition, was, it seems, sustained to both pleadings. Appellant then offered to file an amended petition, claiming that at the time he made the expenditures the country was convulsed with civil war; that Paducah was occupied by the military, and the courts of McCracken (in which county his ward’s estate was situated) were suspended; that no order of the chancellor to dispose of any of her estate could be procured by reason of said suspension, and that such estates as she owned could.only have been sold at ruinous rates; and “that, under the circumstances, there was but one of two courses to pursue, either to let her go naked, unclothed, and unfed, or furnish the money himself.” This amendment was refused by the court, and Jarret failing to plead further, his petition was dismissed, and he appeals to this court.
It is insisted that the action of the court below is warranted and imperatively required by section 9, article 2, chapter 43, of the Revised Statutes, which provides that no disbursement shall be allowed the guardian, for the maintenance and education of the ward, beyond the income of the estate, unless authorized by the deed or will under which the estate is derived, except when the ward is of tender years or infirm health, or can not be bound out, or when it is best for the ward that the principal of his personal estate shall fye applied for his board and tuition, and the court upon settlement of the accounts shall deem such application to have been judicious and properly made; “but that neither the ward nor his real estate shall be liable for any such disbursement.” ■ This section, however, should be construed in connection with the 14th section of same article and chapter, which provides that the chancellor may direct the sale of any of the infant’s *314 real estate, “ where necessary to the proper maintenance and education of the ward, or for the payment of his debts.”
Before the adoption of the Revised Statutes, and while guardians were even more restricted than at present in their power to charge the real estate of their wards, it was held by this court that although it was proper that all disbursements made by the guardian in excess of the income or profits of the ward’s estate should be rigidly scrutinized by the chancellor, yet “if the guardian had done that which the chancellor would certainly have directed, if applied to beforehand, we can perceive no good reason why the guardian should be made to forfeit his claim to an allowance for necessary, proper, and economical disbursements, made for the benefit of his ward, upon the ground merely that he had made them without the previous direction of the chancellor.”
“It may be much better for infants in many cases, and redound more to their advancement in future life, and especially females, to be reared and clothed in economical plainness and decency, and receive a reasonable education, though it may consume their entire patrimony, than to be bound out to trades, or permitted to grow up in ignorance and without the necessary clothing or means to inspire them with self-respect or to introduce them into decent society. The chancellor should act in their behalf, when applied to in loco parentis, in the application of their funds under his control to their best interest, in view of all the circumstances attending their present condition and future prospects in life.” (Withers, &c. v. Hickman, &c., 6 B. Monroe, 295.)
The 14th section of article 1, chapter 43, Revised Statutes, expressly delegates to the courts of chancery the power to sell real estate when necessary to the proper maintenance and education of the ward; and if Jarret, as guardian, acting in good faith, has done only that which the chancellor, if applied to, would have authorized him to have done, had the courts *315 been open for such an application, we can perceive no good reason why he should forfeit his claim to reimbursement for such proper and economical expenditures as he made for the benefit of his ward. Admitting his pleadings to be true, had he done less than he claims to have done, his ward, a young woman, would not only have been driven from society for want of decent clothing, but would have suffered for the commonest necessaries of life, and notwithstanding her valuable real estate would have been a houseless and homeless outcast. Her condition would have been far better without any guardian at all, for then her contracts for necessaries could have been enforced, and she might possibly have been able to have obtained credit sufficient to have raised her above absolute want. Had Jarret refused to act as her guardian, he might as a stranger have paid those from whom she procured the necessaries of life, and recovered from her the reasonable value of the same by being equitably substituted to their rights. (Watson v. Cross, 2 Duvall, 149.)
We can see no reason why his guardianship should place him in an attitude more unfavorable than that of a stranger. And we hold that he has the right to subject the real estate of Mrs. Andrews to the payment of such amount, as under the peculiar circumstances by which he was' surrounded it was neoessary for him to expend of his own means for her proper maintenance, considering the value of her estate at the time, as well as her station in life.
Wherefore the judgment of the court dismissing his petition is reversed, and the cause remanded with instructions to permit his amended petition to be filed. The appellees should also be allowed to plead further if they desire. Further proceedings will be had consistent with this opinion.