CASE 86—PETITION EQUITY—NOVEMBER 5.

## Fielder v. Harbison, Guardian.
## Clemishire, &c., v. Same.

APPEALS FROM LOUISVILLE CHANCERY COURT.

1. WHERE A GUARDIAN HAS EXPENDED A GREATER SUM THAN THE WANTS OF HIS WARDS REQUIRED, the fact that the expenditure was made under the advice of their physician, or by the direction of those having the immediate control of them, affords no defense in an action for the settlement of the guardian's accounts.

2. ANY COMPROMISE OR SETTLEMENT MADE BY THE GUARDIAN WITH HIS WARD immediately after the ward arrives at age, for the ben-

efit of the guardian and to the prejudice of the ward, without a full knowledge on the part of the ward of all the facts, will be disregarded by the chancellor. But where the ward, after arriving at age, with full knowledge of all the facts, makes a settlement with the guardian ratifying expenditures which by reason of the circumstances under which they were made it is just and proper that the ward should ratify, the settlement will be upheld, although the chancellor, if applied to in advance, would not have authorized the expenditures.

A guardian, at the dictation of an elder sister of his wards, under whose control they were, made expenditures in excess of their income, and in excess of what their wants required, the sister supposing that the economy of the guardian when the wards were quite young justified a much larger expenditure as they advanced in years.   Notwithstanding such expenditures during the latter years of the wardship, the estate of each of the wards, which was originally ten thousand dollars, had, at the time she arrived at age, increased to twelve thousand dollars.   Each of the wards, after arriving at age, with full knowledge of her rights, made a settlement with the guardian sanctioning the expenditures he had made.   *Held*—That the wards will not be allowed to repudiate those settlements.

3. THE ACCUMULATIONS OF THE WARD'S PERSONAL ESTATE become a part of the principal after deducting expenditures from year to year.

4. THE PETITION TO SURCHARGE THE GUARDIAN'S SETTLEMENT WAS DEFECTIVE, in that it contained no specific statement as to any improper credit that had been given, or the omission of any item of indebtedness by the guardian, or any averment of fact as to any expenditure that would enable the chancellor to know whether the expenditure was improper.   But as no demurrer was filed, and the case was referred to the commissioner to take proof after an answer had been filed controverting the statements of the petition, and to some extent assigning reasons for the expenditures made, such an issue was formed as would have authorized the chancellor to grant relief under the general averments of the petition if the facts had authorized it.

HELM & BRUCE FOR APPELLANTS.

1. While the general rule is that the person surcharging and falsifying an account, settled either *inter partes* or settled in the county court, must specify the items of his complaint, yet that rule is not applicable to a case like this one, where the complaint is that the aggregate of the guardian's expenditures, when the ward's age and condition are considered, was *grossly extravagant.*

2. As to the law of the case upon the question of expenditures in

excess of income, see Chapline v. Moore, 7 Mon., 170; Withers v. Hickman, 6 B. M., 295; Reemer v. Judah, MS. Op., Dec. 14, 1876; Rinker and wife v. Streit, 33 Grat., 663; Johnston v. Haynes, 68 N. C., 514.

3. The release executed by the ward within a year after she became of age, without any period for deliberation intervening between the settlement of the guardian's accounts and the presentation to her of the release for signature, does not stand in the way of her recovery   Contracts made by guardians with their wards immediately after they become of age are always regarded with suspicion by the chancellor. (Richardson v. Spencer, 18 B. M., 465; Richardson v. Linney, 7 B. M., 573; Garvin's Adm'r v. Williams 44 Mo., 465; s. c., 100 Am. Dec., 314; Hatch v. Hatch, 9 Ves., 292; Ferguson v. Lowery, 54 Ala., 510; s. c., 25 Am. Rep., 718; Waller v. Armistead, 2 Leigh, 14; Adair v. Brinner, 74 N. Y., 554; Hoff man Steam Coal Co. v. Cumberland Coal and Iron Co., 16 Md., 508; s. c., 77 Am. Dec., 311; 2 Perry on Trusts, sec. 851; 2 Herman on Estoppel and Res Judicata, sec. 1095; Lewin on Trusts, ed. 1858, 615.)

4. These actions are not barred by limitation. (Wood on Limitations, p. 622; Joyes v. Hamilton, 10 Bush, 544; Horton v. Banner, 6 Bush, 596.)

TEMPLE BODLEY OF COUNSEL ON SAME SIDE.

RANDOLPH H. BLAIN, B. F. BUCKNER FOR APPELLEE.

1. Where a party being "sui juris" has invoked the jurisdiction of the county court, the judgment rendered is final between the parties, and the only remedy is by appeal. (Acts 1879, vol. 1, p. 198 (1880); Brady v. Cooper, 12 Ky. Law Rep., 420.)

2. A guardian's account settled in the county court is prima facie correct, but it may be surcharged or falsified. (Gen. Stats., 507, sec. 13.)

3. A surcharge is the omission of a credit; a falsification is the insertion of an improper charge. (Adams' Eq., 227.)

4. The particular items attacked must be distinctly pointed out in pleadings, and successfully attacked in proof. (Story's Eq., 800; Adams' Eq., 452; Wooldridge v. Watkins, 3 Bibb, 352 (1814); Lee's Adm'r v. Reed, 4 Dana, 113 (1836); Simon v. Stockton, 2 Litt., 346; Sanders v. Sanders, 2 Litt., 316; Wood's Ex'r v. Wickliffe, 15 B. M., 190; Tanner v. Skinner, 11 Bush, 129; Purcell v. Purcell, 81 Ky., 147; Loesser v. Loesser, 81 Ky., 139; Smith's Adm'r v. Nichols, 5 Ky. Law Rep., 426; Kirtley v. Jamison, 6 Ky. Law Rep., 740.)

5. Limitation runs against each item of open account seriatim. (Smith v. Dawson, 10 B. M., 113; Hearn v. Van Ingen, 7 Bush, 427.)

6. Limitation runs until the filing of an amendment attacking the

particular item.    (Dudley v. Price, 10 B. M., 88; Hyett v. Bank of Ky., 8 Bush.)

7. An action for relief on the ground of fraud or mistake must be commenced within five years next after the cause of action accrued. (Gen. Stats., sec. 2, p. 890; Adams' Eq., 227; Story's Eq., 526; Lupton v. Janney, 13 Peters, 386; Wilde v. Jenkins, 4 Paige, 481; Ellison v. Moffat, 2 Johns. Ch'y, 46; Baker v. Biddle, 1 Baldwin's Rep. (Pa.), 418; Hardin's Adm'r v. Taylor, 78 Ky., 601; Aaron v. Mendel, 78 Ky., 427.)

8. Reference to a commissioner is not a matter of right. (Ky. Code, 379; Loesser v. Loesser, 81 Ky., 144.)

9. A guardian may exceed the income of the ward for maintenance and education.    (Gen. Stats., sec. 9, p. 702; Campbell v. Golden, 79 Ky., 544; Maupin v. Dulaney, 5 Dana, 593; Reamer v. Crawford, MS. Op.)

10. Guardian may consider value of ward's estate and station in life. (Withers v. Hickman, 6 B. M., 295; Jarrett v. Andrews, 7 Bush, 315.)

11. Chancellor will approve that which he would have authorized if applied to beforehand.    (Maupin v. Dulaney, 5 Dana, 593.)

12. Duty of guardian to employ able counsel.    (Chapline v. Moore, 7 Mon., 166.)

13. Guardian entitled to commissions.    (Gen. Stats., sec. 11, p. 703.)

14. Allowance by county court will not be disturbed unless there has been an abuse of authority.    (Wood v. Lee, 5 Mon., 65; Brewer v. Vanarsdale, 6 Dana, 207.)

15. A release given by a ward after becoming of age is valid.    (Kirby v. Taylor, 6 Johns. Ch'y., 242; Sherry v. Sansberry, 3 Ind., 320; Hawkins' Appeal, 8 Casey (Pa. St.), 263.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellee, J. J. Harbison, was appointed the statutory guardian of Myra and Bettie Fielder in the year 1864.    Myra became of age in June of the year 1876, and in September, 1877, a final settlement of her accounts was made, and approved in March, 1878.    On the 9th of May, 1880, Bettie became of age, and shortly after her arrival at age, viz., on the 14th of March, 1881, the guardian made a settlement of her accounts.    The settlement of Myra's accounts was with the court; that of Bettie was made out of court, and a receipt executed acquitting the

appellee of liability except as to the sum found due her on that settlement, viz., $12,825.26.

On October 19, 1882, a period exceeding six years after Myra arrived at age, and two years and five months after Bettie arrived at age, these actions were instituted for the purpose of surcharging these settlements made by the guardian. During the pendency of the action, Myra married her co-appellant, Clemishire. It appears from the testimony, as well as the pleadings, that the assets or estate of the wards in the hands of their guardian as found by the two settlements, was not paid over to them, but retained by the appellee, who controlled and managed it as the agent of the two sisters. There is no claim, however, that the appellee violated his trust as agent in any way, or has failed to account for the estate in his hands as such, the sole object of the petition being to have a re-statement of the accounts, the main error in the settlement, as appears from the amended pleading, being that the guardian had sanctioned the extravagance of the two wards by permitting them to make much larger expenditures out of their income than their wants or station in life required. The original petition contained no specific statement as to any improper credit that had been given, or the omission of any item of indebtedness by the guardian in either settlement; nor is there any averment of fact as to the excess of expenditure for the support of the wards that would enable the chancellor to know whether the expenditure was or not improper. The petitions were, for that reason, fatally defective. No demurrer, however, was filed, but the case referred to the commissioner to take proof, after an answer had been filed controverting the statements of the petition, and, to some extent,

assigning reasons for the expenditures made, without stating the amount; and, in our opinion, such an issue was formed as would have authorized the chancellor to have granted relief under the general averments of the petition if the facts authorized it.

The appellants, however, made each petition more specific by amendments that were permitted to be filed, and the error, if any, made by the court below, consisted in setting aside the order of reference after nearly all the proof had been taken under the issue made with the appellants, and requiring them to make their pleadings more specific. The appellee had invited the surcharge of all his accounts by his answer, and in fact attempted to plead affirmative matter justifying his expenditures, and, therefore, no question arises as to the statute of limitation; and, besides, this action was instituted within five years from the time the settlement of Myra was made final by the approval of the county court.

The principal cause of complaint in each case is, that the guardian allowed his wards to expend too much money, and that for several years their expenditures exceeded the income of the estate. It does, in fact, appear that the appellants were extravagant in their expenditures, and but for such extravagance would have had two or three thousand dollars each in addition to the amount found due them by the appellee on final settlement. It is not pretended that the appellee appropriated their money to his own use, or that they had not received and expended all the money charged to them in the settlements; and the sole question is, should the guardian be now charged with what was expended by them exceeding in amount the sum necessary to board and clothe them,

and to provide them with such comforts in the way of travel, dress, etc., as prudent fathers would furnish their daughters in the same station in life.   The young ladies seem to have been under the control of an elder sister, who dictated to the guardian as to their wants, and the amount of money necessary to meet their yearly expenditures.   He seems to have protested, now and then, as to what he regarded as extravagant, but was met with the fact that both of his wards were in delicate health, and would probably not live until they were old enough to settle with him.   They were advised by their family physician it was necessary to travel for their health, and the proof, in fact, shows that Myra was in a dangerous condition, and this no doubt prompted an expenditure by the guardian, at the direction of their elder sister, of sums of money for some of the years that exceeded the income; and that seems to us, from the testimony, to have been extravagant, looking to their fortune, their station in life, as well as to the necessity for incurring the expenditures for the preservation of their health.   An expenditure of a greater sum by the guardian than their wants required, although under the advice of their physician, or by the direction of those having the immediate charge and control of the children, will afford no defense in an action for a settlement of the guardian's accounts.   A guardian may exceed the income of the ward's estate when the ward is of such infirm health, or of such tender years, as requires the expenditure.   This is a provision of the statute; but when authorized to make such an expenditure it is only so much of the income as is required on account of the condition of his ward.

In Chapline v. Moore, 7 Mon., 150, and in Withers v.

Hickman, 6 B. M., 292, it was adjudged that a court of equity will not permit an encroachment upon the capital of the ward's estate for the purpose even of maintaining a child in health and infancy.   This rule has been, to some extent, modified by the statute referred to, and in Withers v. Hickman, already cited, it was held that if the expenditures by the guardian would have been allowed by the chancellor if called on, then the guardian should be credited by it; and while this rule is equitable, it is best always to consult the chancellor before making extraordinary expenditures.

In this case, for three or four years prior to Bettie's arriving at age, she spent in the aggregate a sum exceeding her income of $2,500.  It is true that she then required a larger sum annually than when of tender years, and so in the case of her sister, but neither should have been permitted to make extravagant expenditures merely because their income justified it.   It may be doubtful, however, from this record whether, when looking to the expenditures during the whole period of the fiducial relation between the appellants and the appellee, the appellee permitted his wards to expend more than was proper. We are inclined to think he did; but it is reasonable to assume that, in the exercise of a prudent judgment on the part of the elder sister and her female relations, with whom these wards lived or under whose control they were, this supposed economy on the part of the guardian when these children were quite young, justified a much larger expenditure when, advancing in years, they were required to assume the social position. their fortune and family entitled them to.   The record conduces to show that the principal of the estate was about ten thousand dollars to

each child, and that he paid over to them each a sum
exceeding twelve thousand, so the fund had increased
instead of diminished in the hands of the guardian; and
while the accumulations of the personal estate must nec-
essarily become a part of the principal, after deducting
expenditures from year to year, still we find the estate
increased in the hands of the guardian, and this brings
us to the consideration of another question that must be
decisive of this case.   Have or not both appellants, after
arriving at full age, with a full and fair understanding of
their claim against their guardian by reason of these
expenditures, settled with the appellee and ratified his
acts in the premises?

It is well settled by the repeated adjudications of this
court that any compromise or settlement made by the
guardian with his ward immediately after his ward arrives
at age, for the benefit of the guardian and to the prejudice
of the ward, without a full knowledge of all the facts, will
be disregarded by the chancellor. (Brewer v. Vanarsdale, 6
Dana, 204; Clay v. Clay, 3 Met., 548; Richardson,&c., v. Lin-
ney, 7 B. M.,571.)   So, in this case, when Bettie Fielder
made this settlement with her guardian about ten months
after she had arrived at age, if she had been ignorant of
her rights as his ward, or been misled by counsel or by her
guardian, or had not been advised as to her claim against
the guardian on account of these unnecessary expenditures,
there might be great reason for holding the guardian
responsible, although the money was expended under the
advice and direction of those in whom both the guardian
and his wards had the right to confide.

Counsel for these appellants, and for the guardian while
acting as such, states that he advised a settlement out of

court of Bettie's estate because of the bungling manner the other settlement had been made in court, and to save the costs attending it; that both Myra and Bettie were present and preferred settling in that way; that the guardian was not present when the settlement was made. The books and accounts were exhibited to them. He fully explained to Bettie her rights in the matter and called her attention to what the witness considered excessive expenditures on her part; that every item and voucher was taken up, and that Bettie and her sister examined each one and discussed some of them, but took no exception whatever. *They fully understood every item.* This witness says he was paid his fees out of the girls' money; that in the other settlements when he found a mistake against the girls he had it corrected, and so of the guardian; and evidently was advising both parties as to their rights in the matter. There was no conflict between the wards and the guardian, and his advice to the guardian was to keep within the line of his duty.

Bettie, when the settlement was completed, made this statement in writing: "I have examined the statement above of my former guardian, J. J. Harbison, and the detailed account from which the above account is taken and the vouchers, *seriatim*, and I find the statement, vouchers, account and balance all correct and satisfactory. My expenditures necessarily exceeded my income, and I hereby ratify and approve what my guardian has done in that respect. For the sake of economy I hereby waive a settlement before the county court and the filing of the vouchers, and ask that this account and statement shall be recorded as a full settlement of my guardian's accounts with me, and agree that the balance therein stated of

$12,825.26 is correct, which remained in his hands as my agent.        (Signed)        BETTIE A. FIELDER.

"Witnesses:  PAT JOYCE, MYRA FIELDER."

It is evident that she had been fully advised by Joyce, and, independent of his statement, the writing she signed indicates clearly that she was aware of his liability for having sanctioned these unnecessary expenditures. The two appellants had been committed to the care of their sister; they moved in the best circle of society; the health of each had been much impaired when small children, and under the belief of their sister, their aunt, and the girls themselves, that this expenditure of money was necessary to restore them to health and vigor, they applied to the guardian for the money, and he furnished it. Under such a state of fact it was right and proper that the girls should each have ratified what the guardian had done, and having done so, the relief sought was properly denied. The girls were not misled. There was no deception by the guardian. Myra had been of age fifteen months before her settlement was made and six years before this action was instituted. She approved the accounts, and was to sign a statement that had been prepared similar to the one signed by her sister, but omitted to do so. She acquiesced in what had been done from that time until this action was brought in the year 1882, nearly five years after the settlement was made. She aided her sister, who was younger, in making her settlement, and witnessed the writing that evidenced her full knowledge of all her rights in the premises. The parol proof and circumstances attending the settlement by Myra, in her own behalf, makes as strong a case against her as that of her sister. The settlement in each case was

wise and eminently just, and this court, while not disposed to relax the rigor of the rule as to settlements between guardian and ward, where the latter has been wronged, will not enforce it where the ward, after full age, has sanctioned expenditures that every rule of moral right required the ward to do, although the chancellor, if applied to during the existence of the fiducial relation, would not have authorized.

The judgment is affirmed on the original and cross-appeal. (Hardin v. Taylor, 78 Ky., 593; Cheever v. Congdon, 34 Mich., 296.