Case 55.—ACTION BY THE COMMONWEALTH FOR THE USE OF THOMAS R. LEE, AGAINST W. P. LEE ON HIS OFFICIAL BOND AS COUNTY JUDGE, TO RECOVER DAMAGES FOR ACCEPTING INSUFFICIENT SURETY ON GUARDIAN'S BOND.—May 2.

## Commonwealth, For Use of Lee, &c. v. Lee, &c.

| 120 | 433 |
| f129 | 578 |

Appeal from Marshall Circuit Court.

W. M. REED, Circuit Judge.

Judgment for defendants. Plantiff appeals. Reversed.

Guardians' Bonds—County Judge—Accepting Insufficient Surety—
Negligence—Liability of Judge on His Official Bond—How
Ascertained—Mother of Ward—Allowance.

1. Guardians' Bonds—County Judge—Accepting Insufficient Surety
—Negligence—Liability of Judge on His Official Bond—Where
a county judge accepts as surety on a guardian's bond of an
infant a person he knows to be insufficient as surety under
the statute, or fails to exercise reasonable diligence to in-
form himself and accepts an insolvent surety, he is liable if
loss occurs, and the measure of his liability is whatever judg-
ment the ward is entitled to against his guardian.

2. How Ascertained—To ascertain such deficiency the guardian
should be charged with any balance of his ward's money
remaining in his hands at the end of a year which ought to
have been invested or loaned out, with interest upon interest
in biennial rests during the time he so held it without invest-
ment.

3. Mother of Ward—Allowances—Where the mother of an infant
is unable to support him from her own small estate she should
be allowed a reasonable sum for his maintenance during his
years of helpless infancy, but should not be allowed to
charge where his labor for her was equal to the value of his
maintenance.

### MODIFIED OPINION.

4. The test of the sufficiency of a surety on a guardian's bond is
whether, being a resident of the State, he is solvent and has
enough property liable for debts to pay the liability assumed
to the ward, in addition to the surety's other liabilities.

5. The county judge's liability to the ward in the acceptance of
surety on the bond of a guardian is measured by the exer-
cise of due care to determine the solvency of the sureties
accepted by him on such bond, and accepts insufficient surety
without exercising such care.

HENDRICK & MILLER for appellant.

1. The only issue in this case is whether the county judge ac-
cepted such surety on the bond as secured to the ward his patri-
mony, and also as to whether he inquired into the condition of
the sureties annually, and kept the bond in such condition as the
law contemplates, by demanding from time to time, if necessary,
additional surety.

2. The court is fairly and squarely confronted with this propo-
sition: That this boy, who was but a babe at the time his guardian
qualified, according to the admitted allegations of the pleadings,

has lost every dollar of his share in his father's estate through
the carelessness of the county judge and the incompetency or
the dishonesty of his guardian. And the court is asked to re-
lieve the county judge and his sureties from the consequence of
his carelessness, in the face of the plain provisions of the stat-
utes and the numerous decisions of this court.

3. If the county judge and his sureties are liable for the county
judge's failing to inquire into the solvency of the surety, where
the sureties are insufficient, it clearly indicates that the county
judge must not simply believe that the sureties are solvent, but
he must have reasonable grounds for believing it.

4. If this court thinks it good policy to hold that a county judge,
who settled with a guardian once in eight years, is not negli-
gent, and that the widow, the mother of the child, makes a bond
good, when she has not a dollar of property subject to execution,
we have not a word to say.

### AUTHORITIES CITED.

Ky. Stat., sec. 2034; 24 Ky. Law Rep., 2301; 24 Ky. Law Rep.,
2220; 22 Ky. Law Rep., 590; 17 Ky. Law Rep., 313; 78 Ky., 315:
3 Bush, 686; 5 Dana, 104; 7 Monroe, 150; 93 Ky., 482; 7 Bush, 311;
19 Ky. Law Rep., 387.

R. O. HESTER for appellee.

1. The contention by appellant is that the surety, Mary Lee,
was, when so accepted by W. P. Lee, as county judge, insolvent
and insufficient as such surety, and that these facts were well
known to appellee, W. P. Lee, as such judge.

The facts are these, as shown by the uncontradicted deposition
of W. P. Lee. W. P. Lee was a deputy in the county clerk's
office of Marshall county from July, 1876, until he was elected
county judge in August, 1878, and lived in the same town with
J. F. Lee, the husband of said surety, Mary Lee; was acquainted
with his property, and after his death, which occurred in March,
1877, recorded the inventory, &c., of his estate, and from such
records and personal knowledge of his property and estate, and
knowing that the personal estate would amount to about $9,000,
and the real estate to $3,000, and there being five children, that the
widow would receive her distributable share and one-third of the
remainder of said estate, amounting between $3,000 and $4,000,
and that appellant's part would be only $850, and considering
the fact that appellant would have to be reared and educated,
that Brown, the guardian, was his brother-in-law and said surety
his mother, it was his judgment, as such judge, that said surety

was sufficient, and being fully satisfied of her solvency and sufficiency accepted her on the bond.

2. The county judge can either act from his "personal" knowledge, or on inquiry. (See case of Coulter v. McIntire, 11 Bush, 567, on said point.)

### LIST OF AUTHORITIES.

1. Judgment to be exercised in accepting a surety on guardian's bond. Burdine, &c. v. Pettus, 79 Ky., 240; Kimball v. Thurman, &c., 17 Ky. Law Rep., 1222; Coulter v. McIntire, 11 Bush, 567.

2. Confirmation of report is an interlocutory order. Adkins, &c. v. Dent, &c., 11 Ky. Law Rep., 86.

OPINION BY JUDGE BARKER.—Reversing.

This is an action by the Commonwealth of Kentucky, for the use of Thomas R. Lee, against the appellee, W. P. Lee, on his official bond as judge of Marshall County Court, to recover damages alleged to have been sustained by his accepting Mary Lee as surety on the bond of T. D. Brown as guardian of T. R. Lee, when he knew she was insolvent.

The following sections of the Kentucky Statutes of 1903 are necessary to a discussion of the questions raised by the record before us:

"Sec. 2017. No guardian, except a testamentary one for nurture and education, can act until he has been appointed by the proper county court, and given covenant to the Commonwealth, with good surety, approved by the court, faithfully to discharge the trust of guardian. The bond shall be carefully kept by the county clerk in a book to be provided for that purpose.

"Sec. 2018. If the court fails to take such covenant, or accept such person or persons as surety as do not satisfy it of their sufficiency, the judge so in default and his sureties shall be jointly and severally liable to the ward for any damage he may sustain thereby.

"Sec. 2034. No disbursements shall be allowed the

guardian for the maintenance and education of the ward beyond the income of the estate, except in the following cases, unless authorized by the deed or will under which the estate is derived: (1) When the ward is of such tender years or infirm health that he can not be bound out as an apprentice, or no suitable person will take him as such. (2) When it is best for the ward that the principal of his personal estate shall be applied for his board and tuition, and the court, upon settlement of the accounts, shall deem such application to have been judicious and properly made. But neither the ward nor his real estate shall be liable for any such disbursement.

"Sec. 2035. If, from any source, a balance is owing by a guardian at the end of any year, counting from the time of his appointment, which ought to have been invested or loaned out for the benefit of the ward in reasonable time, but which remains in the hands of the guardian, he shall be charged with interest from the end of the year in which such balance arose; and thereafter he shall be charged with interest upon interest, in biennial rests, and the guardian shall account to his ward for whatever profit or rate of interest he receives from loans or investments of the trust funds."

J. F. Lee, the father of T. R. Lee, died intestate in Marshall county, Ky., in 1877, leaving a widow, Mary Lee, and five children. His estate consisted of land worth $3,000, and an insurance policy on his life for $5,000, together with other personalty, which realized at sale over $3,000. After the death of J. F. Lee, his son-in-law, T. D. Brown, was appointed and qualified as administrator of his estate, and collected the insurance policy, sold and converted into cash sufficient other personalty to realize the sum of $3,011.53, and out of this sum paid off debts

amounting in round numbers to $1,800. This left
in his hands a balance of $6,211.53, one-third of which
was distributed to the widow, and the remainder
divided equally among the five children. Afterwards,
on the 7th day of October, 1878, appellee, as judge
of the Marshall County Court, appointed T. D. Brown
guardian of T. R. Lee, then an infant about two years
old, and accepted as surety on his bond Mrs. Mary
Lee, the mother of the infant. Upon qualifying as
guardian, Brown charged himself with the infant's
distributable share of his father's estate; thereby be-
coming, in law, responsible for it in this fiducial ca-
pacity. He remained guardian for his infant brother-
in-law, without having executed a new bond, through-
out the infancy of the latter. Upon the ward's ar-
riving at lawful age, this action was instituted against
appellee upon his official bond; the petition stating
substantially the foregoing facts with regard to the
estate, the appointment and qualification of the guar-
dian, and that the surety on the guardian's bond was
at the time of her acceptance insolvent, and known
to be so by him; that, by reason of the execution of
the bond as guardian, and the acceptance of Mrs.
Mary Lee as surety thereon, T. D. Brown received
into his hands and custody all the personal estate of
the infant; that he has become wholly insolvent, and,
unless the ward can recover a judgment against ap-
pellee equal to the estate received and squandered
by his guardian, it will be entirely lost to him; that
by reason of the failure of appellee, as county judge
aforesaid, to require of his guardian a solvent surety,
the ward has been damaged in the sum of $3,216,
for which he prays judgment. A general demurrer
was interposed in the foregoing petition, and over-
ruled by the court, whereupon appellee answered,
placing in issue its material allegations. Upon trial

of the case, the court dismissed the petition] from which judgment this appeal is prosecuted.

The first question with which we are confronted is whether or not, assuming that the estate of the infant was in whole or in part lost by the insolvency of the guardian and his surety, the county judge who accepted the insolvent surety is responsible for the loss, under the provisions of sec. 2018 of the Kentucky Statutes of 1903. The rule is well settled in this State that the county judge is not an insurer of the solvency of the sureties he accepts on guardians' bonds, and, if the evidence before him as to their solvency is such as would satisfy a person of ordinary prudence and judgment, he is not liable for loss occasioned by their insolvency. (Burdine v. Pettus, 79 Ky., 240; Cosby v. Com., 91 Ky., 235, 12 Ky. Law Rep., 808, 15 S. W., 514; Kimball v. Thurman, 98 Ky., 578, 17 Ky. Law Rep., 1222, 33 S. W., 834; Commonwealth v. Tilton, 63 S. W., 602, 23 Ky. Law Rep., 753.) But if, on the contrary, the county judge knows that the surety is insolvent, or if he be ignorant, and fails to exercise reasonable diligence to inform himself, and accepts an insolvent surety, he is clearly liable if loss occurs. In the light of these two principles, we will investigate the knowledge of the appellee as to the insolvency of the surety in the case at bar. Upon this subject we may accept his own statement of the facts. He says that he had known J. F. Lee in his lifetime, and was acquainted with his estate. He knew the proposed guardian, T. D. Brown, and the surety, Mary Lee, well. He knew Mrs. Lee had no property of any description, except the distributable share of her husband's estate and her dower or homestead interest in his realty. As administrator, he turned over to the surety her share as distributee of her husband's estate. Her distribut-

able share of her husband's estate consisted, first, of about $2,000 in money; and, second, $500 or $600 worth of articles of personalty exempt from distribution and sale, which she received under subsection 5 of section 1403 of the Kentucky Statutes of 1903. As the money was not subject to execution, and the other personalty received by her was exempt from the payment of her debts, its possession added nothing to her solvency. It is not clear from the record whether she took a homestead interest in her husband's estate, or dower. This, however, is immaterial, as in either case she was entitled to homestead in it as against her creditors. These facts being within his knowledge, the judge can not be heard to say he was satisfied the surety was sufficient, unless we are to hold that he might wilfully shut his eyes to the fact that she had no property whatever subject to execution, and assert that nevertheless he was satisfied of her sufficiency; in other words, knowing her insufficiency, he was still satisfied of her sufficiency. The appellee may have believed (and we have no doubt he did believe) the interest of the infant would be safe in the hands of his brother-in-law, the guardian, and his mother, the surety, and that they would deal honestly and equitably with him and his estate; but this is vastly different from being satisfied of the sufficiency of the surety. The object of the statute is to protect the estate of infants in the hands of guardians, and the liability of county judges for accepting insufficient sureties on guardian's bonds is to insure the exercise of ordinary judgment and prudence on their part in seeing to it that the proposed sureties are sufficient. This construction admits of no sentimental belief on the part of the judge, based upon the relationship of the parties in interest. The statute is a practical one, requiring prudence and

diligence in the protection of the infant's property. We conclude that the evidence shows the appellee knew at the time he accepted Mrs. Lee as surety upon the guardian's bond of T. D. Brown she had no property subject to execution, and consequently knew she was insufficient as surety under the statute, and is, therefore, liable for whatever damage accrued to the infant by reason of this insufficiency.

This brings us to the second branch of this case. The measure of appellee's liability to the injured ward is to make good whatever judgment the latter would be entitled to recover against his. guardian and the surety. In this case the liability is reached by a consideration of the sum received by the guardian, the rate of interest with which he is chargeable, and the legitimacy of his expenditures.

Section 2035 of the Kentucky Statutes of 1903 requires that the guardian shall be charged with any balance of his ward's money remaining in his hands at the end of a year, which ought to have been invested or loaned out in a reasonable time, and that he should be charged with interest upon interest, in biennial rests, during the period he so held it without investment. This rule of computation was properly adhered to by the commissioner appointed to audit the accounts of the guardian.

Ordinarily, parents are required to support their infant children without charge; but where the parent is poor, and unable to discharge this legal and moral duty, and the infant has an estate of its own, the law allows the parent remuneration out of the estate of the child. It is also a general rule that the principal of an infant's estate can not be expended for maintenance; but this rule, under section 2034 of the statute, is subject to the exception that, where the ward is of such tender years or infirm health that

he can not be bound out as an apprentice, or no suitable person will take him as such, or when it is best for the ward that the principal of his personal estate shall be applied for his board and tuition, and the court, upon settlement of the account, shall deem such application to have been judiciously and properly made. (Fielder v. Harbison, 93 Ky. 482, 14 Ky. Law Rep., 481, 20 S. W., 508; Campbell v. Golden, 79 Ky., 544; Jarret v. Andrews, 7 Bush, 311; Overfield v. Overfield, 17 Ky. Law Rep., 313, 30 S. W., 994; Chapline v. Moore, 7 T. B. Mon., 150; Withers v. Hickman, 6 B. Mon., 292; Patton's Adm'r v. Patton's Heirs, 3 B. Mon., 160.)

Applying these principles to the case at bar, the maintenance of the infant should be paid, first, out of the income of the estate; but, if the circumstances were such that the income was insufficient for his proper support, then the guardian should be allowed to make up the deficiency from the principal of the personal estate in his hands. This record, in our opinion, shows that the mother was unable to support her son from her own small estate without assistance from his. She should be allowed, therefore, a reasonable sum for his maintenance during his years of helpless infancy, but should not be allowed to charge where his labor for her was equal to the value of his maintenance.

We have not undertaken to lay down a hard and fast rule for the chancellor on this branch of the case, as all of the facts necessary for its adjudication are not now in the record. If the mother and infant children lived together, and the infant's land was used for the common support of the family, that ought to be considered in estimating the amount of his board. If the mother elected to take a homestead interest instead of dower in her husband's es-

tate, the homestead being for the benefit of herself and infant children, that fact should be considered. The attempt to expend the principal of the ward's estate should be carefully scrutinized, and not allowed except where the circumstances clearly come within the permission of the statute.

Upon the return of the case, the chancellor will experience no difficulty in arriving at a proper judgment. Both parties should be permitted to amend the pleadings and proof in any reasonable way necessary to better present the case under the principles herein enunciated.

Judgment reversed for further procedure consistent with this opinion.

MODIFIED OPINION BY JUDGE O'REAR ON REHEARING, December 16, 1905.

A surety upon a guardian's bond must be solvent to be sufficient. While the statute says that the county judge is liable if he accepts such sureties as do not satisfy him of their sufficiency, it does not follow that his being merely satisfied will exonerate him from liability to the ward for failing to require sufficient surety. Yet his liability is not that of an insurer, but of one required to exercise ordinary care and good faith in the matter. A surety may be sufficient who is solvent, or worth a sum in excess of the personal estate and income of the real estate of the ward, although the surety's property may not all be subject to levy of an execution. He might have property subject to execution equal to the value of the ward's estate, and yet be insufficient, as if he were insolvent; that is, if on a winding up of his business he would not have enough property to pay his debts, or be unable to pay his debts in the ordinary course of daily transaction. We think the

test of the surety's sufficiency is whether he is sol-vent, being a resident of the State and having enough property liable for debts to pay the liability assumed to the ward in addition to the surety's other liabil-ities. The county judge's liability to the ward is if he fails to use ordinary care to acquaint himself with the solvency of the sureties accepted by him on the bond, and accepts insufficient surety without exercising such care. In this case we are satisfied from the record that the county judge did not use that degree of care in taking the bond, or in seeing to it that it continued safe.

While the opinion is modified to the extent indicated, the petition for rehearing is overruled on the merits of the case.

JUDGE BARKER dissents to modification of opinion.