## Walker, et al. v. Thompson.

(Decided November 29, 1911.)

### Appeal from Greenup Circuit Court.

1. Guardian and Ward—Management of Ward's Estate.—A guardian
   must use in the management of his ward's estate such diligence
   and good judgment as a man of ordinary prudence would usually
   use in his own affairs.
2. Renting Ward's Land For Part of Crop.—A guardian may rent out
   his ward's land for a part of the crops instead of a money rent if
   he has reason to believe that this is for the best interest of his
   wards.

E. E. FULLERTON for appellant.

W. C. HALBERT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

Volney E. Thompson was appointed guardian of Leroy Walker and his sister, Willie Mae Walker, on October 25, 1895. Leroy Walker was born in the year 1883. When he was about 14 years old he went to California to live and returned when he was about 24 years old. His guardian had made settlements in the county court from time to time and paid over to him after he was of age the amount in his hands as shown by the settlements. This action was brought by Leroy Walker against his former guardian to surcharge his settlements. Leroy Walker and his sister owned 81 acres of land. He sought to surcharge his guardian's settlements because he had not been charged with a sufficient sum for the rent of the land during the years which he held it. He also alleged that he had committed waste by hauling off the straw and manure from the land and placing it on his farm. The allegations of the petition were denied. The circuit court referred the case to the master commissioner. The commissioner reported in favor of the guardian. The plaintiff filed exceptions to the commissioner's report. The court overruled the exceptions, and dismissed the petition. The plaintiff appeals.

It is insisted for appellant that the interest was not compounded against the guardian in the county court settlements as it should have been under the statute, but this matter was not alleged in the petition as a ground

·for surcharging the settlement. The rule is that the settlement is prima facie evidence, and that when an action is brought to surcharge it, the specific errors relied on, must be pointed out. Were the rule otherwise, the guardian could not know what items in his account were contested, and the pleadings would not indicate what was to be tried. Such settlements involve a great number of items, and it is a reasonable requirement that the items which are attacked shall be specifically pointed out. (Wooldridge v. Watkins, 3 Bibb. 352; Loesser v. Loesser, 81 Ky., 143; Fielder v. Harbison, 93 Ky., 482; Blake v. Wolfe, 105 Ky., 386.) We cannot, therefore, consider any other matters than those complained of in the petition.

As to the wasting of the land, we find little in the evidence to sustain this charge, and concur in the commissioner's finding that the guardian turned over the land in as good condition as he received it. As to the rent of the land, the facts are these: The guardian cultivated the land himself the first year, accounting to his wards for one-half of the crops. After the first year he rented it to tenants on the same terms, that is, for one-half of the crops, and under all the evidence we conclude that he accounted to his wards for all that he received. It is insisted for appellant that the land could have been rented for money rent for $250 or $300 a year, and that the guardian should be charged with this sum annually as the rent of the land. When the guardian received the land it had little fencing on it, and no improvements except a cabin 18 feet square. It had been run down, a great deal of it was wet and craw-fishy; it did not produce as good crops as its appearance indicated that it would. Whether he should rent it out annually for a money rent or rent it out for a part of the crops was a question addressed to his discretion, and to be determined by the exercise of an honest judgment for the best interest of his wards. It was his duty not only to make a reasonable rent for his wards, but also to preserve the land for them so far as this could be done by ordinary care. Land rented out for money rent year after year is liable to go down, for the reason that the tenant is interested most in getting his money out of it. In view of the whole record we cannot say that the guardian did not use good prudence and judgment in renting the land as he did. He made it pay about 6 per cent after paying taxes and all charges, and as a matter of fact Leroy Walker himself

has rented the land in the same way since he took charge of it. It is true the land did not yield so much in the earlier years of the guardianship, but it is a matter of common knowledge that in the years of 1896, 1897 and 1898, the country was recovering from the panic of 1893, and prices of farm products were much lower than they have been since. A guardian should use in the interest of his ward such diligence and good judgment as a man of ordinary prudence would use in his own interest, but a more stringent liability should not be placed upon him. The guardian here seems to have been a successful farmer and to have managed this land about as he did his own. While the guardian should be held to a just responsibility, the rule should not be made so stringent as to deter men of good business capacity from undertaking trusts of this sort. On the whole record we see no grounds for disturbing the finding of the circuit judge on the facts.

Judgment affirmed.