Hughart v. Spratt, &c.

---

CASE 64—PETITION EQUITY—JANUARY 30.

# Hughart v. Spratt, &c.

| 78 | 313 |
|-----|-----|
| 130 | 359 |

APPEAL FROM BATH COURT OF COMMON PLEAS.

1. A surety in a guardian's bond, in an action against him by the ward, is entitled to make the same defenses that his principal would be entitled to make.

2. A mother, having maintained her daughter, is held not chargeable as guardian with the rents and profits of her daughter's estate, being not more than would reasonably be required for her support.

3. H. devised his real estate to his wife "during her natural life, for the purpose of her support and the education of her two children," and in case the wife should marry again, to be equally divided among her and the two children. The wife married, but the land was not divided, the daughter continuing to live with, and being supported by, her mother. *Held*—that the latter, having carried out the spirit of the will, should not be charged, as guardian, with the rent of the daughter's estate.

WM. LINDSAY FOR APPELLANT.

It being the intention of the testator that the profits of the daughter's estate should be expended in her support, the mother, having maintained her, should not be charged with the rent of her land.

R. GUDGELL & SON FOR APPELLANT.

The mother controlled her daughter's estate as trustee, and not as guardian; but admitting that she acted as guardian, having supported the daughter, she should not be charged with the rent of her estate.

REID & STONE FOR APPELLEES.

The guardian is properly charged with the rents and profits of her daughter's estate, and the credits allowed her are in excess of what she is entitled to.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

In the year 1854 Jacob Henry, a resident of the county of Bath, died, leaving surviving him his widow and two children, to whom he devised a part of his estate. He had been previously married, and had other children, whose interests are not affected by this litigation. He left a last will, by which he devised to his widow "the use and profit of the balance of my lands and negroes, except as hereinafter provided, *during her natural life, for the purpose of her support and education of her two children, Jacob and Eliza, &c.,* . . . . . . and, after her death, to Jacob and Eliza in fee; and for the purpose of aiding her in the support of herself and those children named, I also give and bequeath to my said wife my household and kitchen furniture, four work-horses, wagon, gear, farming utensils, &c. . . . . . In case my wife should marry, then the land shall be divided into three equal parts, one of which, including the dwelling-house, shall be for the use of my wife as above, the other two allotted to her two children, Jacob and Eliza, or, when Jacob arrives at maturity or either of the children marry and desire a division, in that case, a division into three parts, as

above intended, shall be made; *but my wish and request is that it may remain undivided, and my wife and children* live: together as long as may be."

The widow married William Sharpe in the year 1857, and he died in October, 1864. There was no division of the land at or during her marriage with Sharpe, but a partition was made in the year 1869. The quantity allotted the widow and her two children was 88 acres each. In the year 1865, after the death of Sharpe, the second husband, the widow, with a view of recovering from Sharpe's estate moneys alleged to be due her daughter Eliza, qualified as her guardian, with the present appellant and her son, Jacob Henry, as her sureties on the guardian's bond. She collected $1,615 for her ward from this estate. Her daughter lived with her on the land devised until her marriage with Spratt, in the year 1875. She made two settlements in the county court of her accounts as guardian, one in the year 1872 and the other in the year 1875, and; by the last settlement, is shown to be indebted to her daughter in a large sum—say $3,336. In the meantime the mother, who was guardian, and her son, one of the sureties, became insolvent, and Spratt and wife are attempting, in this proceeding, to coerce payment of the appellant, the solvent surety.

The surety alleges in his answer a failure on the part of the guardian to apply for or ask the credits to which she was entitled as against her daughter, and that this refusal or failure on her part resulted from a desire to enlarge her liability, that it might be collected from him. The surety claims that the ward should be charged with her board and clothing furnished by the mother, if the latter is held accountable for the rents, and gives in detail many other items with which he says the guardian should have been credited.

We concur with the learned chancellor that the equities
of the surety in this case are purely derivative; and if, as
between the guardian and Mrs. Spratt, her ward, the credits
would not be allowed the guardian, they must be denied the
surety.   He can make the same defenses and no other, as
this case is presented, that the mother could, if she, and not
the surety, was contesting the right of recovery.

The only real estate the guardian owned was the dower in
the estates of her deceased husbands—eighty-eight acres in
her first husband's lands, and about fifty acres in the lands
of Sharpe.   She had purchased the interest of her son; but
this was on a credit, and seems never to have been paid.
Now, in a controversy between the mother and daughter,
in regard to the rents of the daughter's land, worth some
$250 per *annum*, the chancellor, would hesitate long be-
fore he would require the mother to board and clothe the
daughter, and yet hold her accountable for the rents.   The
mother, under such a ruling, with an income of four or five
hundred dollars per annum, is compelled to pay, if no other
expenditure was incurred for the daughter, the full value of
the rent of the ward's land, and made to expend her entire
income for the support of herself and children.   Conceding,
however, the force of the argument addressed to the court
below, and made the basis of the judgment rendered, and
still it seems to us that the equities of this case are with the
surety, and the appellees presented no claim entitling them
to a judgment.

The will of the father of Mrs. Spratt evidences an earnest
desire on his part that his widow and his children should
remain together as long as possible, and with a *view* of en-
abling the wife to support and maintain herself and the two
children, he devises her the entire land, the proceeds of

which are in controversy, during her life, with the proviso that if she marries, it is to be partitioned, &c.

His object was, that the children should be maintained as well as the mother, and that no one else should enjoy the fruits of his labor. That the children were raised and maintained on this farm, by the mother, until her marriage with Sharpe, is not controverted, and that they continued to be supported and maintained during the life of Sharpe is also conceded; and that the daughter remained with the mother after the death of Sharpe, on the same place, until her marriage with Spratt, where they were all living at the institution of this action, are facts also appearing from the record. And although the land was divided, if the *children* were raised and maintained on the same land, and in the same manner as contemplated by the will, why should the chancellor enlarge the liability of the wife by holding her to an account that would impoverish her and her sureties, and enrich the ward? It is manifest that the mother had the right to dispose of all the profits from the property devised to the support of herself and children, and in the opinion of the testator it would require the entire income to support the family. There were only 264 acres in the tract, and when charging such an estate with the burden of supporting the widow and of educating and maintaining the children, it is reasonable to suppose that the entire income would be consumed.

The stepfather and the mother supported the children until Sharpe's death, and the mother until her daughter's marriage. The object of the testator in requiring a division of the property, in the event the wife should marry, was, that the interest of each child might be applied to his or her support; and if the *mother* has done this, although she again

.married, why should she be held responsible? As the case
now stands, the mother is made to support and maintain her
daughter out of her own share of the estate, which is one
third; and if the son was under age, she would be required
to support him also. This is not the equity to which the
surety is entitled, nor is it executing the purpose in view by
the testator when he required a division in the event of his
wife's marriage. Suppose there had been no division, and
the mother, although married, had supported and maintained
her children suitable to their condition in life, would the
chancellor, when seeing that she had discharged the trust,
still say to her I will hold you, because you have married,
to account for the rent of your children's estate, when the
very purpose of having it divided was that it might be ap-
plied to their support? The use of or rent of the place has
been applied as the testator desired it, and in a controversy
with the mother no recovery could be had, and therefore
none should be had against the surety. The amount col-
lected of Sharpe's administrator $1,615, collected of Cas-
sity, she has more than paid: by amount paid George for
land, $675; amount paid for piano, $360; by amount paid
Henry, $68.10; amount paid for riding-horse, $150; for
buggy, $175; for sewing-machine, schooling, physician's bills,
taxes, &c., this sum has been fully discharged. It is evident
that Mrs. Spratt was raised and maintained as her father
desired she should be. She had her riding-horse, piano, and
all the comforts and enjoyments usual for young ladies in her
station in life, and her mother, with an economy that is not
generally practiced in this country by mothers who are guar-
dians, has saved to her daughter her entire patrimony, and
her efforts in that direction no doubt contributed to her in-
solvency. The daughter and her husband are now living on

the land, and all that the surety claims is that the mother, under the facts of this case, should be allowed the annual rent of eighty-eight acres of land for maintaining, educating, and furnishing her ward with the necessaries and even luxuries of life for the period of twenty years. The equity, as well as the justice of the case, demands that the allowance should be made.

The judgment is reversed, with directions to dismiss the petition.

To a petition for rehearing—

CHIEF JUSTICE PRYOR DELIVERED THE RESPONSE OF THE COURT.

We have again carefully considered the record in this case, and feel satisfied that, under the provisions of the will of Jacob Henry, his widow, whether acting in the capacity of guardian or otherwise, could only be made liable for so much of the profits of the land as was sufficient to support and educate her two children. Having done this, her liability terminated, and there is no reason for holding her surety responsible. The attention of the chancellor was not called, perhaps, to the provisions of Henry's will in determining this question. As said in the former opinion, the use of or rent of the land has been applied as the testator desired, and the widow or her surety cannot be held responsible to a greater extent.

Petition overruled.