WILLIAM T. LONG, RESPONDENT, *v.* WILLIAM LONG, AS SURVIVOR OF GEORGE W. ROOT AND DUNCAN MACINTYRE, APPELLANT.

*Sale of infants' real estate — incumbrance on the estate — payment of, without an order — laches — liability of the surety on the guardian's bond.*

In an action against a surety on the bond of a special guardian, given in proceedings for the sale of infants' real estate, brought by one of the former infants, it appeared that the proceeding had been instituted by the infants and their general guardian to obtain a sale of the lands in order to pay off incumbrances thereon, which incumbrances included a judgment in favor of the present defendant; that the proceeding was regularly conducted by a reference, referee's report, and order of the court directing the special guardian to contract for a sale; that the guardian thereupon reported a contract of sale thereof for a certain price; that an order was granted confirming his report and ordering him to convey the infants' interest; that he accordingly made a conveyance, received the money therefor, and applied a portion of it in payment of the judgment.

No question as to the propriety of such payment was made for more than twenty years thereafter, but after the death of the guardian and the settlement of his estate the present action was brought against the defendant, as one of the sureties on the guardian's bond, to recover the infants' interest in the money so paid upon the defendant's judgment, on the ground that such payment by the guardian was a misappropriation and conversion of the fund, for the reason that an order of the court was not previously obtained for the payment, under the rule of court (Rule 69 of 1858, present Rule 58), and for the reason that no such order could have been made as the judgment was void.

*Held,* that, whether the judgment was void or voidable was not material as it was conceded that the claim on which it was based was a valid one against the infants, estate, and the court could have ordered the claim paid if no judgment had been entered thereon.

That, although the money was paid without an order and in violation of a rule of court, the estate of the infants had had the benefit of it as they were the residuary legatees of the estate.

That the present plaintiff, being one of the former infants, was not equitably entitled to the money so paid, because he had had the benefit of the fund; and the long acquiescence, without instituting proceedings for an accounting, was strong evidence of his assent to the payment.

That the surety was entitled to make the same defense that his principal could have made.

That the proper order of court might have been obtained *nunc pro tunc ;* and that the case was one in which the court might disregard one of its own rules, where, to adhere to a strict compliance therewith, would work an injustice.

APPEAL by the defendant William Long from a judgment of the Supreme Court, in favor of the plaintiff William T. Long, entered

in the office of the clerk of Livingston county on the 11th day of April, 1892, on the report of a referee for $5,000 and costs.

The rule of the Supreme Court in reference to the disposition of funds arising from the sale of infants' real estate, in force at the time of the proceeding set forth herein (Rule 69 of the Rules of 1858), contained the following provision: "If the proceeds of the sale exceed five hundred dollars, and the guardian has not given security by mortgage upon real estate, he shall bring the proceeds into court, or invest the same under the direction of the court, for the use of the infant."

This provision is embodied in the present Rule 58 of the General Rules of Practice.

*Abbott & Abbott,* for the appellant.

*J. B. Adams,* for the respondent.

LEWIS, J.:

This action was brought upon the bond of a special guardian given in proceedings in this court for the sale of infants' real estate, plaintiff being one of the infants, and the defendant William Long, and one George W. Root, uniting as sureties, with Duncan MacIntyre as principal. MacIntyre was the special guardian of the plaintiff and his sister for the purposes of such sale. Plaintiff and his sister, by Duncan MacIntyre, their general guardian, made and presented to this court their petition, dated February 1, 1868, for the sale of their lands. The petition was in due form, and alleged that said infants were entitled to certain lands, describing them, that there were incumbrances thereon consisting of a judgment in favor of said William Long for the sum of $10,245, no part of which had been paid, and that they were also incumbered by a legacy of $4,000, and other liens, and prayed that the lands might be sold to pay said incumbrances. There was the usual reference to ascertain the truth of the facts stated in the petition, and whether a sale of the premises, and what part thereof, would be beneficial to the infants, and the reasons therefor. The premises sought to be sold consisted of several pieces of land. The referee reported that the incumbrances on the premises, by a judgment, mortgages and a legacy, amounted to the sum of $24,245; he reported in favor of a sale, fixing the value of each of the several parcels of land, and

the price at which they should be sold. The report was duly confirmed, and an order entered directing said guardian to contract for the sale of the land at the prices fixed by such report. The guardian reported to the court that he had entered into a contract to sell the "Gilmore Farm," that being one of the parcels described in the petition, for $9,150. An order was granted April 20, 1868, confirming said report and ordering the guardian to convey the infants' interest in said premises on payment of such purchase-money. The guardian conveyed and received the money therefor, and applied a portion of said money towards the payment of the Long judgment, and, with said moneys, also paid a $4,000 legacy, which was, by the will, made a charge upon the land. The special guardian died more than twenty years ago, and his estate has been settled and distributed. After the death of the special guardian the mother of the infants was appointed special guardian in the proceeding in his stead, and other parcels of the land were sold, and the proceeds used in paying other claims against the estate. No question as to the propriety of the payment appears to have been raised for more than twenty years after it was made. This action was brought against the defendant William Long, as one of the sureties of the special guardian, to recover the infants' interest in said money so paid upon the judgment. It is the plaintiff's contention that such payment by the guardian was a misappropriation and conversion of the funds, for the reason that an order of the court was not previously obtained directing such payment to be made. He further claims that no such order could have been made for such payment, because the judgment was void. The learned referee declined to pass upon the question of the validity of the judgment entered in favor of Long, but put his decision on the ground that it was a misappropriation of the money to pay it out without an order of the court, for the reason that a rule of the court required a special guardian to bring the fund into court.

Whether the judgment was void or voidable is not material, because it is conceded that the claim of William Long against the estate was a valid one for the amount of the judgment. The court could have ordered the claim paid if no judgment had been entered thereon. The only question is, as to whether the payment of the claim, under the facts and circumstances presented in this case,

must be held to have been a misappropriation and conversion of the money by the special guardian.,

The proceeding was instituted to sell these particular lands to pay the Long judgment. It was a debt the estate was liable to pay. All of the proceedings were regular, except that the money was used to pay this debt without an order of the court having first been obtained directing the payment so to be made. Had the facts appearing upon this record been presented to the court at any time after the special guardian had applied the money, a *nunc pro tunc* order would unquestionably have been granted directing its payment. The guardian neglected to apply for such order, perhaps, for the reason that there were other parcels of land thereafter to be sold. If such order had been obtained, it would be a perfect protection to the guardian, and to the defendant as his surety. The money was paid without the order, and in violation of a rule of this court; but the estate owned by this plaintiff and his sister has had the benefit of such payment, as they were the residuary legatees of the estate. Had not the property been sold in this proceeding, some other proceeding would have been instituted by the defendant Long to subject the land to the payment of his debt and the other debts of the estate. It is certainly a great injustice to compel the surety now to pay this claim. The plaintiff is not equitably entitled to it, because he has had the benefit of the fund.

Had the plaintiff made application, after the guardian had paid the money, for an order requiring him to pay the money into court, would not the court have refused it, under the circumstances?

The surety is entitled to make the same defense that the principal could have made. (*Hughart* v. *Spratt*, 78 Ky., 313.) Plaintiff charges the guardian with the conversion of the money, when, in fact, he applied it to the discharge of plaintiff's estate from liability for a debt.

Clearly, plaintiff was benefited; then, what is the extent of his injury by the wrongful act of the guardian?

This is not a case of a voluntary payment made by a stranger, giving him no right of action or claim against the debtor, but it was made by the guardian in good faith, in legal proceedings instituted for the sale of the estate for the purpose of discharging it of the debt.

And, besides, the acquiescence for so many years without insti-

tuting proceedings for an accounting and requiring the money to be paid into court is strong evidence, under the circumstances, of plaintiff's assent to the payment of the money.

Courts have frequently, in the settlement of guardian's accounts, allowed them credit for advances made from their own funds for the making of permanent improvements to the estate of their wards, when they had no authority so to do without a previous order of the court, if the expenditures were made in good faith, believing that what they did was for the ward's benefit, if it be made to appear that the court, upon presentation of the facts, would have granted the requisite order. (*Waldrip* v. *Tulley*, 48 Ark., 300 ; *Kingsbury* v. *Power*, 22 N. E. Rep., 482.)

Should the defendant be compelled to pay this judgment, he would probably be entitled to subrogation and could reclaim the amount paid from the estate, if a sufficient amount thereof in value could be found in the possession of the plaintiffs. But it seems to us that, as the judgment has nothing to rest upon but the absence of the order, justice demands, under the circumstances, that the rule requiring the entry thereof should not be enforced.

There are authorities holding that the Supreme Court may disregard one of its rules, where, to adhere to a strict compliance therewith will work an injustice. This, we think, is such a case.

In the case of *Hunt* v. *Hunt* (58 N. Y., 666), referred to in the referee's opinion, the special guardian applied the money to the payment of the debts of the father of the infants. The court held there was no authority for such an application without the express authority of the court, but adds the significant remark, " as such was not the purpose for which the sale was ordered ; " the inference being that, had the money been paid as in the case at bar, the court would probably have held the payment proper.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event ; and the same disposition should be made of the case of Francis A. Dike against the same defendant, which was argued at the same time, and presents the same questions.

DWIGHT, P. J., and MACOMBER, J., concurred.

Judgment reversed and a new trial granted, with costs to abide the event.