DESSIE D. ELLIS, Appellant, v. MARGERY A. SOPER.

111   631
127   376

**Guardian and Ward:** RELEASE OF GUARDIAN: *When not conclusive.* A ward is not concluded by a release acknowledging final and satisfactory settlement with the guardian, where it is given without any accounting or settlement in fact, on the mistaken assurance of the guardian that nothing is due, though no fraud or undue influence is practiced in obtaining it.

ORDER OF DISCHARGE UPON RELEASE: *When not adjudication.* An order discharging a guardian pursuant to a release acknowledging final settlement, given without any settlement in fact, on the mistaken assurance of the guardian that nothing was due, is not an adjudication on an accounting, and hence is not a bar to an action by the ward, for an accounting.

FINAL REPORT. A guardian's final accounting should cover the entire period of guardianship, where the intermediate reports filed are incomplete.

SUPPORT OF WARDS BY GUARDIAN'S MOTHER: *Equitable allowance for in absence of order of allowance.* In the absence of an order allowing a widow who is guardian of her children's estate to use the same for their support, a court of equity, on final accounting, will allow her credit for past support, where it is

shown that her own estate was insufficient to support them properly.

RULE APPLIED. A widow having an estate worth $11,500 and an annual income of $1,100 for the support of herself and children, for whom she is guardian, should be allowed only the income of their estate towards their support and education, when the estate of each is only $1,800, since she is primarily liable for their support during minority.

**Pleadings:** ALLEGATIONS IN REPLY. Allegations setting up a new cause of action or matters already in issue are not permissible in a reply.

DEEMER, J., concurring specially.

*Appeal from Jones District Court.*—HON. WILLIAM G. THOMPSON, Judge.

THURSDAY, MAY 24, 1900.

PLAINTIFF brings this action in equity against the defendant, formerly her guardian, to set aside an order in probate approving the final report of said guardian, and discharging her, and for an accounting and judgment in the sum of one thousand eight hundred dollars. Plaintiff alleges as grounds for such relief that there is one thousand eight hundred dollars due to her; that her receipt to and release of said guardian upon which said order was based was obtained from plaintiff by fraud, deceit, and undue influence. The defendant answered, in effect denying that there is anything due to plaintiff; alleging a complete settlement with plaintiff, after she became of age by marriage; that said release was given upon such settlement, and denying said allegations of fraud. The defendant sets up a counterclaim, and asks judgment thereon, but the record does not support this demand, and, as the lower court found against her thereon, and she has not appealed, the counterclaim requires no further notice. The plaintiff, in reply, alleged that her guardian failed to protect her interest in the division of the land; that she never obtained

any order of the court authorizing her to lease plaintiff's land; that she allowed the land to run down, and converted the rents thereof to her own use. These allegations were stricken out on motion as setting up a new cause of action for negligence or malfeasance. A further allegation was made in the reply, of matters already in issue, which will be hereafter considered. In the reply the plaintiff, for want of knowledge or information, denied defendant's allegation as to the amount of taxes paid. Upon these issues decree was rendered dismissing the plaintiff's petition, from which she appeals.—*Reversed.*

*C. M. Brown* and *J. W. Doxsee* for appellant.

*E. B. Soper* and *Ellison, Ercanbrack & Lawrence* for appellee.

GIVEN, J.—I. There was no error in sustaining the defendant's motion to strike from the reply. The first paragraph stricken presents a new cause of action, and this is not permissible in a reply. The second presents issues already joined, issues involved in the accounting asked, and therefore was properly stricken.

II. The facts necessary to be noticed are, in substance, these: George Soper died intestate on the twenty-eighth day of October, 1886, leaving the defendant, his widow, and their thirteen children, of whom the plaintiff is one, surviving him. Five of said children (including the plaintiff) were then minors, plaintiff being seven years old, and for these five children the defendant was appointed guardian. On distribution of the personal estate there was paid to the defendant, as guardian of the plaintiff, four hundred and sixty-nine dollars and eighty-eight cents, and on partition of the real estate there was set off to the plaintiff fifty-two acres of land valued at one thousand three hundred and fifteen dollars. There was set off to the defendant as

widow a farm valued at seven thousand two hundred and thirty-three dollars, and personal property, including her temporary allowance and exempt property, of the value of four thousand four hundred and thirty dollars and ninety-eight cents. The plaintiff and said other minor children continued to reside with and to be supported by their mother from the time of their father's death until they became of age by marriage or lapse of time. Plaintiff married one John W. Ellis in 1897, when nearly seventeen years of age. The defendant, with her children, resided on the farm set apart to her until a few years prior to 1897, when she removed to town for the purpose of securing better school facilities for the children. The plaintiff was kept in school about nine months of each year, and received instruction in music, the expenses of which the defendant paid. On the thirty-first day of August, 1889, the defendant filed a report charging herself with rent of plaintiff's land, and interest thereon, taking credit for the taxes of 1887-88, a small amount in attorney's fees, and showing balance due the plaintiff at that time of six hundred and ninety-one dollars and twenty-seven cents. On the twenty-fifth day of March, 1897, after the marriage of the plaintiff, the defendant filed a final report showing that plaintiff had become of age by marriage on the nineteenth day of February, 1897, and stating that since then defendant had a final and complete settlement with her, as shown by the following voucher: "I, the undersigned, Dessie D. Ellis, nee Soper, hereby acknowledge that I became of lawful age on the 28th day of January, 1897, by marriage with Jno. W. Ellis, and I was 17 years of age on February 19th, 1897, and that I examined the report of my guardian, Margery A. Soper, filed in this court, as her first report, and on this 23d day of March, 1897, after being made acquainted with the business pertaining to my guardian's management during my minority, have made a full, final and satisfactory settlement with my said guardian. And

I also waive notice on me of the hearing of the final report, and I ask that the same be approved, and she be discharged and released from her bonds, so far as I am concerned. Dated March 23d, 1897. Dessie D. Soper Ellis." No statement of account accompanied this report, but by virtue of said release the defendant was discharged as guardian.

III. We first inquire whether the plaintiff should be concluded by said receipt and release of March 23, 1897. Appellant cites many authorities to show that in receiving that release the defendant is held to the exercise of the utmost good faith. This rule is undisputed, and, in view of the facts of this case, should be applied in all its force. We are satisfied that in giving and receiving that release both parties acted upon the assumption that the plaintiff's estate had been consumed in her support, and that no fraud was intended, nor deceit or undue influence practiced, by the defendant in obtaining that voucher. If it be true that the plaintiff had not received all that was due to her, but acted on the mistaken assurances of her mother that she had been fully paid when she gave that release, then the release operated as a fraud upon her, and she is entitled to an accounting. The defendant never did render a full account of this guardianship, and, while there was some talk of settlement, there was in fact no accounting to or settlement with the plaintiff when this release was taken. It was taken upon a mere guess as to the true state of the account, and therefore we conclude that the plaintiff is entitled in equity to an accounting. It is insisted by defendant that the order discharging her was an adjudication, and therefore she cannot be held to an accounting. It was not an adjudication upon an accounting, but upon the release alone, and, if that release is fraudulent, the order does not prevent the court of equity from ascertaining the true state of the account between these parties. Plaintiff insists that in this accounting the balance

of six hundred and ninety-one dollars and twenty-seven cents, as shown by the first order, should be taken as the basis of a further accounting, while defendant now presents her account covering the entire period of her guardianship. That first report was evidently incomplete. It was never approved nor disapproved. Therefore we conclude that an accounting should now be made covering the entire period. The defendant, in her answer, states this account as follows: "To maintenance of plaintiff by defendant for ten years, at $1.50 per week, $780.00; to clothing, music lessons, school books, etc., for the years 1887, 1888, and 1899, at $35 per year, $105.00; to taxes paid on the real property belonging to plaintiff for the years 1887 to '96, inclusive, $635.76; to cash expended for or paid over to the plaintiff at her request, as per Exhibit B hereof, $22.89,—making the total amount of the charges of this defendant against the plaintiff the sum of $1,682.69. That against the same the plaintiff should be credited with the following: By rental of real property for ten years at the rate of $85.00 per year, $850.00; by cash from administrator of estate of George Soper, as per inventory, $469.88, —making the total amount for which this plaintiff should be credited, $1,319.88." The credit of twenty-two dollars and eighty-nine cents is for cash and clothing given to the plaintiff after she became of age by marriage, and is not proper to be considered in this accounting.

IV. There is no dispute but that defendant furnished to plaintiff and paid for all items charged in her account, and that the amounts charged are reasonable. The plaintiff assigns two reasons why defendant should not be credited therewith, namely: *First,* that, being the mother of the plaintiff, the defendant was legally bound to support her during minority, and that without an order or court so authorizing she will not be permitted to encroach upon the estate of the ward for her support. Schouler, in his work on Do-

mestic relations (5th ed. A. D. 1895), in the chapter treating of duties of parents, says: "Sec. 239. The mother, after the death of the father, remains the head of the family. * * * And since the tendency of the day is to give the mother a more equal share in the parental rights, it follows that she should assume more of the parental burdens. It is nevertheless clear that the courts show special favor to the mother, as they should; and, if a child has property and means of its own, they will rather, in any case, charge the expenses of its education and maintenance upon such property than force her to contribute." A court of chancery will not readily make the support and education of infant children a charge upon the property of their widowed mother while their own means are ample. "Sec. 240. Courts of chancery, following this well-known principle, largely restrict a child's maintenance to the income of his property; but where the property is small, and the income insufficient for his support, the court will sometimes allow the capital to be broken, though rarely for the pupose of the child's past maintenance, when his future education and support will be left thereby unprovided for." In 17 Am. & Eng. Enc. Law, under the title "Parent and Child," on page 358, we find in regard to the duty of parents, as regards the maintenance of their children, the following: "The principle is clearly established that a father must maintain and educate his minor children if he has the ability, and he has at common law no right to reimbursement for any expenditures for this purpose, and no allowance can be made to him out of the property of the children while his own means are sufficient; but when the father is not of sufficient ability to support them the court will order so much of their income to be applied to that purpose as is necessary. The child's fortune and the circumstances of the father will be considered in deciding what, if any, allowance should be made. The welfare of the child requires that he should be educated and maintained in accordance with the social posi-

tion which his means will enable him to enjoy, and the whole or any part of the expense thereof will be charged upon his estate, according as the circumstances of the father require. A parent should properly, before applying his child's income to its support, procure the sanction of the court, but the expense of past maintenance may be allowed on proper cause shown. The father, even if not needy, may maintain the child from any fund vested in him for that purpose. Although modern tendency is to hold that the mother is bound to support her child after the death of the father, yet the courts show special favor to the mother, and, if the child has property, they will charge the expense of its education and maintenane on said property, rather than force her to contribute," —citing cases. "The court, in allowing maintenance, will generally restrict it to the income from the child's property; but where the property is small, and the income is not sufficient for his support, the capital may be broken into, although rarely to allow for past maintenance, when his future support will be thereby rendered doubtful,"—citing cases. In *re Besondy,* 32 Minn, 385 (20 N. W. Rep. 366), in delivering the opinion, the court says: "The law shows special favor to the mother, and her application for past maintenance will be granted in cases where that of the father would not be listened to. This, we apprehend, grows out of her naturally dependent position, and of the consequent reluctance of the courts to encroach upon her estate. We do not, however, undertake to say that her affirmative application for past maintenance will in all cases be granted when the child has property of his own, though his support was not intended to be a gratuity. The circumstances of the case might be such as to render it altogether inequitable. * * * The courts are not, ordinarily, careful to require of a mother who remains unmarried, as in the case of a father, that a special case be made showing the inadequacy of her own means, and the necessity of an allowance for that reason." See, also, *Pierce v. Pierce,* 64 Wis. 73 (24 N. W. Rep. 498); *Voessing*

*v. Voessing,* 4 Redf. Sur. 360; *Perkins v. Westcoat,* 3 Colo.
App. 338 (33 Pac. Rep. 139); *Melanefy v. O'Driscoll,* 164
Mass. 422 (41 N. E. Rep. 654); Herrick & Docksee Prob.
Law (2d ed.) 618; *Welch v. Burris,* 29 Iowa, 186; *Minor
Heirs of Bradford v. Bodfish,* 39 Iowa, 681; *Gerdes
v. Weiser,* 54 Iowa, 591. There can be no doubt from these
authorities that upon a proper showing the defendant might
have had an order of court allowing her to use the principal
of the plaintiff's estate for her support. That, in the absence
of such an order, a court of equity may, upon an accounting
and proper showing, allow for past support, is well estab-
lished by the authorities already cited. Parents are alike
liable for the support of their minor children, and the author-
ities we have cited only apply when there is question as to the
ability of either to furnish support. The favor shown to the
mother is not because she is less liable than the father, but
for the reason that usually she is less able to earn the sup-
port.

V.  We have cited the authorities most favorable to the
defendant that have come to our notice, and it is clear from
them that the defendant was primarily bound for the sup-
port of the plaintiff, and that she would not be allowed to en-
croach upon plaintiff's estate, especially the principal thereof,
unless her own circumstances were such as to render
her unable to furnish the support. We have seen that
the plaintiff's estate consisted of the four hundred
and sixty-nine dollars and eighty-nine cents derived from the
distribution of the personal property and fifty-two acres of
farm land, and the defendant's of the farm, valued at seven
thousand two hundred and thirty-three dollars, and personal
property valued at four thousand four hundred and thirty
dollars and ninety-eight cents. This was quite a competency
to the defendant, and, well managed, should have brought her
an income of about one thousand one hundred dollars a year,
—quite a sum with which to support the family,—yet all of
it appears to have been consumed. Courts are more ready to

allow the income to be used for support than the principal. We think, in view of the number of minor children, the manner in which they were supported and educated, and the amount of defendant's income, that she should be allowed the income of the plaintiff's estate towards her support and education. Assuming, as we may that the income of the other four children was the same as the plaintiff's, this gave the defendant an income of about one thousand six hundred dollars a year for the support of herself and family. Surely, the defendant, with this income, and an estate worth over eleven thousand five hundred dollars, should not be allowed to charge the principal of the plaintiff's estate for her support and education. We conclude that the plaintiff should have judgment against the defendant for the four hundred sixty nine dollars and eighty-eight cents cash received from the administratrix, with 6 per cent. per annum interest thereon from the 19th day of February, 1897, the date at which plaintiff became of age by marriage, and entitled to the money. The judgment of the district court is reversed, and the case remanded for judgment in harmony with this opinion.—REVERSED.

DEEMER, J.—I agree to the conclusion, but not to some of the statements of law announced in the opinion.