## Hamilton's Admx, et al v. Riney, et al.

(Decided November 2, 1910.)

### Appeal from Daviess Circuit Court.

1. **Parent and Child—Provision for Infant Child—Services of Child—Liability of Parent.**—It is the law of this State that ordinarily the parent must provide for his infant child without regard

to the child's estate, if the parent is able to do so. But where the parent has more estate than the child and the child performs such services in the family as children usually do for their parent, the parent alone is chargeable with his child's support.

2. Same—General Rule—Conditions—Exceptions.—The general rule which requires a parent to sustain his infant child is founded on the law of nature. It is the exception to the rule where the maintenance of the infant is imposed on its own estate instead of its parent's. The exception rests upon such unusual conditions as require the infant to have furnished, on account of station in life and fortune, more than the parent can reasonably afford or justify.

3. Married Woman's Estate—Partition and Settlement.—In an action for the settlement and partition of the estate of a deceased married woman, by her heirs at law, the venue is in the county where her representative qualified. (Section 66, Civil Code.) The fact that incidentally other questions arise in an action localized by section 66 of the Civil Code, does not oust the first jurisdiction. The rule is that when jurisdiction for one purpose properly attaches, the court will grant full relief among the parties on all pertinent questions.

4. Same—Sale of Land—Distribution of Proceeds.—Where it became necessary to sell a farm which belonged to a man who died leaving a widow and several minor children, the widow having remarried and died, leaving her last husband and four infant children living, the farm being indivisible without impairing its value, it should be sold as a whole and the proceeds distributed thus: One fourth interest of the husband therein which he had bought from his wife, should be subjected to the payment of the balance of the purchase owing by him; then if any part of it is not thus paid the remainder of it is a charge against the estate of the widow and a preferred debt against the one-fourth of the proceeds of the land when sold. Out of the balance ascertain the present value of the dower of the second husband, which is one-third in value of the land left to the widow after all liens thereon are satisfied. The remainder of the purchase money will go to the infants as heirs at law of the mother, subject to her debts. The husband is not entitled to the specific articles exempted by section 1403, subsection 5, Ky. St., to a widow, as that section does not apply to the husband of a deceased married woman. The husband was entitled to dower and until it was allotted he was entitled to the use of the mansion and curtilage, but he will not be allowed to profit by his own neglect in not causing the dower to be allotted.

SWEENEY, ELLIS & SWEENEY for appellants.

ALBERT OBERST, LA VEGA CLEMENTS and BEN D. RINGO for appellees.

Opinion of the Court by Judge O'Rear.

Mary V. Riney became the widow of Richard T. Riney by his death in Daviess county in 1897. They had issue, four infant children. The widow qualified as administratrix of his estate in the Daviess county court. Shortly afterwards she moved to Crittenden county, and there qualified as guardian for her children, who were then aged one, three, five and seven respectively. Two years afterwards she moved back to Daviess county, and then bought a farm in conjunction with her father, each paying one-half the purchase price. The farm comprised 146 acres. The consideration was about $6,000. Mrs. Riney with her children and her brother, a bachelor, resided upon and cultivated the farm for five years. The brother rented the one-half owned by his father. In other respects they shared equally in the crops raised, and bore equally the cost of production. In the fall of 1905 Mrs. Riney married appellant C. S. Hamilton. He came to her farm to reside. She and her brother continued, however, to run the farm during the year 1906. He then sold out his interest in the stock and crops on hand to Mrs. Hamilton and her husband. After that Mrs. Hamilton and her husband conducted the business until her death in June, 1908. Mrs. Riney had no property when she married Richard T. Riney, unless it was $130, the value of a horse her father had given her. Upon Richard T. Riney's death she sold all his tangible personal property, including the articles exempt to the widow and infants. At his death there was in bank a deposit to his credit of $350. Her sale bill as administratrix shows that she realized at the sale $926.26. Whether that included the exempt articles we are not informed, but infer that it did not from two circumstances: One, as she was not required to report or account for exempt articles in her settlement and report as administratrix, they were probably not included in the sale bill which she filed; and, it is shown in the testimony that she realized from the sale and other personalty about $2,000, which would account for all the items just named. After the death of Richard T. Riney his father died intestate. The infants of Richard T. Riney inherited a small interest in their grandfather's real estate, which was sold in an action brought to settle and partition his estate. Their interest amounted to $440 net. Richard T. Riney had a mortgage debt against his father, which was not paid

until after the elder Riney's death, and then amounted to $1,055. Both these last-named sums were paid over to Mary V. Riney in September, 1900. Some years later one of the infant's died, without issue, survived by his mother.

In addition to the foregoing sums Mary V. Riney collected $1,000 insurance upon her husband's life, which was payable to her.

Assuming she had the $750 exempt property on hand when she purchased the farm, and that the interest on the total sum had supported her and the infants in the meantime (and it had, we are reasonably certain, for two years of that time she lived with her father who did not charge her board) she had the following sums when she moved back to Daviess county:

| | | |
|---|---|---|
| Proceeds life insurance | $1,000 | 00 |
| Collected on mortgage against elder Riney | 1,055 | 00 |
| Collected on proceeds infant's land | 440 | 00 |
| Collected on sale bill husband's estate | 926 | 26 |
| Collected on sale exempt articles | 750 | 00 |
| Total | $4,371 | 26 |
| Of this she paid for one-half interest in 146 acre farm | $3,000 | 00 |
| Leaving | $1,371 | 26 |

Which, or much of which, she invested in live stock, farming implements, furniture, and so forth, when she moved on the farm. Besides furniture and farming implements value not shown, we learn from the record that she purchased a mule, two mares, two cows, and a lot of hogs, and, necessarily, provision for feeding this live stock and the family until the first crop could be raised. We thus see that the $1,371.26 must have been well consumed in those investments.

When she married appellant Hamilton in the fall of 1905, she had on hands the same property, with its increase, together with her half of a crop of tobacco, which sold for $350, and her half of the crops of corn and hay. She had also $500 on deposit in a local bank, at interest, and she was out of debt, except that she owed her infants as their guardian. Appellant Hamilton brought to the place when he married, two horses, a buggy, a cart, and some bedding. No money. One of the horses was a stal-

lion which he had been standing for several years, and made a season with the following year. The fees earned by the horse for 1905 amounted to $450. For 1906 about the same. When Mrs. Hamilton's brother left in 1906 he sold out to them his interest in the crop of corn, a mule, and a cow. For this Mrs. Hamilton assigned him a note she held on another party, and paid him perhaps some money. Appellant Hamilton paid him a check for about $100 and gave his note for $130. Hamilton and his wife perhaps, paid equal amounts on this purchase. Subsequently Hamilton bought a sow and pigs, and spent something over $100 for seeds for the place.

The proceeds of the tobacco crop for 1905 were turned over to him. He deposited this sum to his own credit. So he did, it seems, the proceeds of sales of hogs and other produce of the farm. In 1906 Hamilton and his wife bought from her father the other half of the 146 acre farm for $3,200, all on credit, $1,003 paid shortly after, is accounted for by Mrs. Hamilton's assigning to her husband the certificate of deposit which she held for $500 and interest, and her giving him a check for the balance to her credit in bank, amounting in all to $661. The tobacco money of $350 he had already received, making $1,011.

The following year $700 more were paid on the purchase price of the land. This was paid too out of the proceeds of her property. At least her half of the tobacco sold for $450, which he collected. He collected also for her share of the hogs, wheat and hay sold—in all more than $700.

Upon Mrs. Hamilton's death in 1908, appellant C. S. Hamilton qualified as her administrator. He selected appraisors who appraised her personal estate. They were neighbors who knew her property. They appraised as hers such articles as were exhibited, or as they could find, amounting to about $2,050. He refused to sign or return the appraisement, or to return any inventory of the estate. The children were forced by circumstances to leave the home, and found residence among neighbors and kinsmen. W. G. Riney qualified as guardian of the remaining infants and brought this suit in their behalf in the Daviess circuit court to settle the estate of their mother, and for its partition among them and the appellants.

Appellant contends in this action (1) that the Daviess circuit court had no jurisdiction to settle the accounts

of the guardian appointed in Crittenden. (2) That he had paid his share of the $3,200 of purchase money on the one-half of the farm conveyed to him and his wife by her father, E. C. Blanford, and that her share alone was in lien for the balance of the purchase money after crediting the $1,700 above alluded to. (3) That he and his wife were partners in the farming operations, and that all the crops of 1907-8, and certain live stock were the assets of the firm, while certain items, a mule, some hogs, and certain farm implements were his individual property, and were erroneously included in the appraisement bill by the appraisers. (4) That he was entitled to dower in his wife's three-fourths of the farm, and until dower was allotted was entitled to possess the curtilage rent free. (5) That as surviving spouse he was entitled to the several exempt items which the statute sets apart from the personal estate of a decedent for the benefit of his widow and infant children living with her. (6) He asserts that the farm is divisible without materially impairing its value, and thereupon asks that his one-fourth be set apart in fee, adjoining his dower of one-third of Mrs. Hamilton's three-fourths after paying the balance she was owing on the purchase price of one-fourth of the land. (7) He asserts claim for the decedent for the support of the minors while she was their guardian, and alleges that the reasonable cost of maintaining them and educating them was equal to the estate inherited by them from their father and grandfather.

The guardian of the infants might have elected to treat the investment of their estate in lands by their former guardian as having been for their benefit, but he has not. He elects to sue for the sum of money owing to them with its interest. That is, then, the relief he is entitled to.

The account should be stated thus:

| | | |
|---|---:|---:|
| Proceeds of sale bill | | $926 26 |
| Deposit in bank | | 350 00 |
| | | $1,276 26 |
| Less one-half inherited by widow, from her husband | $638 13 | |
| Less one share inherited from deceased infant | 159 52 | |
| | | 797 65 |
| | | $478 61 |

| | |
|---|---|
| Int. on same from Jan., 1898, to Nov., 1910... | 366 35 |
| | $844 96 |
| One-half of mortgage note on $1,050, Sept. 12, 1900 ............................... | $527 50 |
| Less one share inherited from deceased child. | 131 87 |
| | $395 63 |
| Interest to Nov. 12, 1910 ................. | 241 32 |
| | $636 95 |
| Amount collected from sale of infants' land.. | $440 00 |
| Less one-fourth inherited from deceased infant ................................ | 110 00 |
| | $330 00 |
| Int. from Sept. 12, 1900, to Nov. 12, 1910 .... | 201 30 |
| | $531 30 |
| Total due these wards by former guardian .. | $844 96 |
| | 636 95 |
| | 531 30 |
| | $2,013 21 |

To the claim asserted by appellant that the minor children should be charged with their support, the response is, it is the law of this state that ordinarily the parent must provide for his infant child, without regard to the child's estate, if the parent is able to do so. Where the parent has more estate than the child, and the latter performs such services in the family as children usually do for their parents, the former alone is chargeable with the latter's support. Especially should this be so here, when the $750 allowed by law for the widow and infants is consumed by the widow in their care during the time when their services were unproductive. (Wilson v. Parson, 106 Ky. 385.) Aside from the $750 mentioned, the proportion of the mother's estate to each of the infants was about $2,500 to $450. The boys as they became old enough worked on the place, in the tobacco fields and otherwise.

This general rule which requires a parent to sustain his infant child, is founded on the law of nature. It is the exception to the rule where the maintenance of the

infant is imposed on its own estate instead of its parents. The exceptions rest upon such unusual conditions as require the infant to have furnished on account of station in life and fortune, more than the parent can reasonably afford or justify. (Crooks v. Turpin, 1 B. M. 183; James v. Buchanan, 5 Ky. Law Rep. 690; Hedges v. Hedges, 73 S. W. 1112; 24 Ky. Law Rep. 2220.)

The sum thus found due the infants is a preferred claim against their former guardian's estate (Mary V. Hamilton) and will be enforced accordingly.

The contention that the claim cannot be asserted in this suit in the Daviess circuit court is not well founded. This is not a suit by a ward against his guardian for a settlement of his accounts under sec. 67, Civil Code. But it is an action for the settlement and partition of the estate of Mary V. Riney, deceased, by her heirs-at-law, who happen also to be creditors of her estate. The venue of such action is in the county where her personal representative qualified. (Sec. 66, Civil Code.) The fact that incidentally other questions arise in an action localized by Sec. 66, of the Civil Code, does not oust the first jurisdiction. On the contrary, the rule that where jurisdiction for one purpose properly attaches the court will grant full relief among the parties on all pertinent questions, applies. (Wilson v. Roberts, 90 Ky. 122, 11 Ky. Law Rep. 929; Phalan v. L. S. V. & T Co., 88 Ky. 24, 10 Ky. Law Rep. 663; Fishback v. Green, 87 Ky. 107, 9 Rep. 959; DeHaven v. DeHaven, 104 Ky. 41, 209 L. Rep. 663.)

On the question of fact, we find that Mary V. Hamilton paid the $1,700 on the purchase price of the land. True, her husband gave his personal checks for it, but she had personally furnished him the money which enabled him to do so, and presumably from the manner of dealing shown, and from all the circumstances, for the express purposes of making him her agent to make these payments for her. We are satisfied that it was never intended by her for a gift to him.

As to the alleged partnership between appellant and his wife, the record is too scanty to enable us to determine the matter. Nothing is shown as to capital invested by each. There is no data by which the court could settle the accounts. For capital is a partnership liability of equal dignity with profits in a final settlement. There is enough however, to support the claim that they were jointly engaged in cultivating the farm

for 1907 and part of 1908. Let appellant have one-half the proceeds of the crops of 1907 and the wheat and hay of 1908 less the costs of production, which it seems were equally borne. Then let him have his mule, his sow bought of Wagner, and her produce, his riding plow and gear and bedding.

We find from the evidence, as the circuit court did, that the farm is not divisible without materially impairing its value. It should, therefore, be sold as a whole.

The proceeds should be distributed thus: The one-fourth interest of appellant be subjected to the payment of the balance of the purchase money due E. C. Blandford, then if any part of it is not thus paid, the remainder is a charge against the estate of Mary V. Hamilton, and a preferred debt as against the one-fourth of the proceeds of the land when sold. Out of the remainder, ascertain the present value of appellant's expectancy in the dower (See Lancaster v. Lancaster, 78 Ky. 198; and Alexander v. Bradley, 3 Bush, and O'Donnell v. O'Donnell, 3 Bush 316), which dower is one-third in value of the land left to Mary V. Hamilton after the lien of Blandford is satisfied. (See 2135, Ky. Stats.) The remainder of the purchase money will go to the infants as heirs-at-law of their mother subject to her debts. The only indebtedness so far as this record shows, is the cost of administration, the contingent liability to Blandford on purchase of land, and the sum herein found to be due the infants. If the personal estate of the decedent Mary V. Hamilton is not enough to pay these items, then the remainder must be charged against the infants share of the proceeds of the sale of the land.

Appellant is not entitled to the specific articles exempted by Sec. 1403, Subsec. 5, Ky. Stats, to a widow. That section does not apply to the husband of a deceased married woman.

Appellant is entitled to dower, it is true, and until dower was allotted, he was entitled to use the mansion and curtilage. But as he was the one who should have caused the dower to be allotted, he will not be allowed to profit by his own neglect so as to get the use of this property rent free until the allottment. Had the heirs prevented the allotment, or had they been in possession of the lands so that dower could not be allotted except by an action against them, the statute invoked (Sec. 2138, Ky. Stats.) would apply.

The circuit court adjudged that the sum due the infants by their former guardian was $978.27. The true amount as is shown above is $2,013.21. The circuit court further adjudged that the personal estate of Mary V. Hamilton for distribution was $1,317.78, one-half of which was adjudged to the appellant and the other half to the infants. It appears that there will not be any surplus personal estate, after the costs of administration and debts above named are satisfied.

Appellant has occupied the lands of decedent since her death. The court required a settlement in this action of the rents reasonably chargeable to him during that time, and found that $550 a year was a reasonable rental for the farm, and that appellant was entitled to one-fourth of it—his share as joint owner of the fee. A judgment was rendered on this basis. But that was error. He was entitled not only to his one-fourth, but to one-third of the other three-fourths of the rent until dower was allotted, or the land is sold.

The judgment is reversed on the original appeal and on the cross appeal, and remanded for proceedings not inconsistent herewith. Let each party pay their costs in this court.