## Watson, By, etc. v. Watson, Guardian, et al.

(Decided March 7, 1919.)

### Appeal from Lawrence Circuit Court.

1. Guardian and Ward—Authority to Expend Property of Ward.—A guardian may apply to a court of equity for authority to expend property of the ward, and if the facts authorize it the court has jurisdiction to direct it to be made.

2. Parent and Child—Guardian and Ward—Use of Ward's Estate.—While it is the duty of the parent to maintain, educate and support his child for whom he may be guardian, still, if the parent is in such needy financial circumstances as that he is unable to do so, he may use the ward's estate within the limits of the law for that purpose.

3. Guardian and Ward—Use of Ward's Income.—Where a ward is unable to labor for his support 'on account of his extreme youth, and it is shown that it is necessary to expend the whole of his income—which amounts to $58.75 per month—for his support and education, the chancellor may direct and authorize the guardian to expend that amount for such purposes until the further orders of the court.

4. Insurance—Payment of Debts Out of Proceeds.—Where a testator in his will directed the payment of certain debts out of the proceeds of a life insurance policy which was at the time payable to his estate, and in the will stated that he would assign the policy to his son, which he afterward did, the policy will be held by the son burdened with the trust for the payment of the debts specified in the will.

A. O. CARTER for appellant.

F. M. VINSON and HAGER & STEWART for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

M. G. Watson died testate on December 26, 1914, a resident of Lawrence county, Kentucky. On July 14 and 15, 1913, he executed two papers which were probated by the county court of Lawrence county after his death as his last will and testament. His widow, the appellee, was made executrix of the will, and since her husband's death she has been duly appointed and qualified as guardian for her only child, the appellee, Morton Wall Watson, who, at the time of the rendition of the judgment herein, was about six years of age.

The appellee, as guardian for her infant child, as executrix of her husband's will, and in her individual capacity, filed this suit against her ward to obtain direc-

tions from the chancellor with reference to the disposition of the proceeds of a $10,000.00 life insurance policy mentioned in the will, and to obtain permission from the chancellor to expend a certain amount of the income of her ward in payment of his board, maintenance and education. Perhaps other relief was also sought in her individual capacity, but no question relating to that is involved in this appeal. The judgment rendered upon final submission approved the expenditure of the proceeds of the life insurance policy as made by the executrix, and directed and authorized her as guardian to spend as much as $58.75 per month in maintaining, caring for and educating the ward until the further orders of the court. Calling in question the correctness of the judgment, the guardian *ad litem* who was appointed for the ward prosecutes this appeal.

From the record it would seem that the testator held a number of insurance policies on his life, but the exact number of them, or their amounts, does not appear. It is shown, however, that at the time of the execution of his will he held a policy in the Home Life Insurance Company of New York for $10,000.00, payable to his estate. He also held a policy in the New York Life Insurance Company which, upon his death, paid $25.00 per month for a period of twenty years. He held stock in quite a number of undeveloped companies engaged in mining enterprises of different natures, some of which were oil companies, others coal companies, and something more than $17,000.00 par value of stock in the Olive Hill Clay Products Company, a concern which we conclude from the record was organized for developing and manufacturing clay products. To pay for the stock in the Clay Products Company the testator had borrowed $1,000.00 from his sister, Mrs. Stewart, for which he had executed his note, and $5,000.00 from his mother-in-law, Mrs. Pennypacker, for which he had also executed his note, and to secure which he pledged his stock in that company, making thereon this endorsement: "This stock is security for a collateral note of $5,000.00, and when the note is paid by insurance of my son, Morton Wall Watson, then he is to become the owner of same. M. G. Watson." Whether that endorsement was made before or after the execution of the will is not shown, but in the will the infant son is devised that stock. The will also includes this clause:

"Further, I will later assign ten thousand dollars ($10,000.00) of life insurance (now payable to my estate) to my son, which insurance I wish to have applied, in part, to the payment of a debt-against my clay stock, and such a part of the remainder as is necessary to the purchase of the corner store or brick building of the Gunnell block and the vacant lot and the lot and barber shop below that, with such room as necessary for ingress and egress for the convenience of said store, which store is located on the corner north of the Louisa National Bank, in Louisa, Kentucky.''

Later on, in speaking of the same $10,000.00 policy, the will says: ''Then of the residue of the ten thousand dollars ($10,000.00) such an amount as remains, to and including the amount of a note which I owe my sister (Mrs. F. L. Stewart) of one thousand dollars ($1,000.00) I would want paid. This ten thousand dollars ($10,000.00) namely from the Home Life Insurance Company policies; and in the event the ten thousand dollars ($10,000.00) above referred to should not be sufficient to completely liquidate the indebtedness of the two properties,'' &c.

The two pieces of property referred to in the last quotation was property in which the testator owned only a one-fourth undivided interest. He directed his executrix to purchase the other three-fourths interest in one of the pieces and to sell his one-fourth interest in the other and to pay the difference out of the proceeds of the $10,000.00 policy. As will be seen, he also placed the proceeds of that policy in trust for the discharge of the balance of the indebtedness which he owed to his mother-in-law and sister, as well as expressly placing in trust such proceeds for the payment of his mother-in-law's debt by the endorsement which he made upon the stock. After executing the will, and before his death, instead of assigning the policy to his son as he stated in his will he would do, he changed the beneficiary in the policy from his estate to his son, and conceiving that there might be some question as to her right to pay the proceeds of that policy as directed in the will after the change of beneficiary, the executrix is now asking the advice of the chancellor.

To state the proposition we think is sufficient to settle the right of the executrix to appropriate the proceeds of the policy toward the extinguishment of the two notes of the mother-in-law and sister, which at the time of the trial aggregated $5,857.35.

If the testator in his will had said nothing about his contemplated assignment of the policy to his son burdened with the trust which he placed upon it in his will, there could be but little question that the change of beneficiary in the policy afterward was a change of his intention and a *pro tanto* revocation of the will. But having stated in his will his intention to assign that policy to his son, when he did so it was but a carrying out of the terms of his will and may be considered a part of it. So that when he subsequently changed the beneficiary in the policy so as to make it payable to his son (and which is tantamount to an assignment of the policy, having no greater force than an assignment) he was conforming his will to what he had therein stipulated he would do. We therefore have but little difficulty in concluding that the son as the new beneficiary in the policy took it burdened with the trust imposed by the will. Under this view the judgment approving the expenditures by the wife of the proceeds of the policy as the will directs was fully authorized.

As heretofore stated, a large portion of the testator's property was and is nonproductive. The income from all his productive property, including the $25.00 per month from the New York Life Insurance Company, amounts to $117.50 per month, and this income was devised by the will to the wife and son jointly for their maintenance and support. The testator owned no residence but lived with his mother-in-law, where his widow and son are now living.

Section 2032 of the Kentucky Statutes provides in substance that the guardian shall have the custody of his ward and the possession, care and management of his estate, and out of such estate shall provide for the necessary and proper maintenance and education of the ward. Section 2034 of the statute reads:

"No disbursements shall be allowed the guardian for the maintenance and education of the ward beyond the income of the estate, except in the following cases, unless authorized by the deed or will under which the estate is derived:

1. "When the ward is of such tender years or infirm health that he can not be bound out as an apprentice, or no suitable person will take him as such.

2. "When it is best for the ward that the principal of his personal estate shall be applied for his board and

tuition, and the court, upon settlement of the accounts, shall deem such application to have been judicious and properly made. But neither the ward nor his real estate shall be liable for any such disbursement."

Notwithstanding such provisions it is the settled rule that since there is imposed upon parents the natural duty to support and maintain their children, they may not as guardians for them be allowed anything out of the ward's estate for such purposes unless the parent is in such needy financial circumstances as that he is unable to do so. Hughart v. Spratt, 78 Ky., 313; Overfield v. Overfield, 17 R. 313, 30 S. W. 994; Davis v. Richards, 22 R. 590, 58 S. W. 477; Hedges v. Hedges, 24 R. 2220, 73 S. W. 1112; Harper v. Payne, Gdn., 24 R. 2301, 73 S. W. 1123; Clay v. Clay, 27 R. 1020, 87 S. W. 807.

The needy circumstances of the mother in this case are shown by uncontradicted testimony, and that this is true there can be no question. It is likewise established by the most convincing proof that the ward's one-half of the income ($58.75) is barely sufficient to meet his necessities in the way of board, clothing, education and other supplies which one in his social circumstances needs and requires.

Courts of general equity jurisdiction within the limits prescribed by the statutory law of the forum, if there be any such law upon the subject, have general supervisory authority and jurisdiction over the persons as well as the property of all citizens who are under any legal disability. Keegan's Gdn. v. U. S. Trust Co., &c., 182 Ky. 330, and Fielder v. Harbison's Gdn., 93 Ky. 482. And if the chancellor would approve of an expenditure by the fiduciary for the benefit of the ward after it was made upon the ground that it was authorized by the local law, he may direct such expenditure in advance if the facts authorizing it are made to appear. Thus in the Fielder case, *supra,* this court says: "A guardian may exceed the income of the ward's estate when the ward is of such infirm health, or of such tender years, as requires the expenditure. This is a provision of the statute; but when authorized to make such an expenditure it is only so much of the income as is required on account of the condition of his ward."

Further along in the opinion, after referring to the case of Withers v. Hickman, 6 B. Mon., 292, in which it

was held that the guardian could not encroach upon the capital of the ward's estate in any event, the court said:

"This rule has been, to some extent, modified by the statute referred to, and in Withers v. Hickman, already cited, it was held that if the expenditures by the guardian would have been allowed by the chancellor if called on, then the guardian should be credited by it; and while this rule is equitable, it is best always to consult the chancellor before making extraordinary expenditures."

It will thus be seen that the court not only recognized the rule that the ward might consult the chancellor in advance as to the propriety of expenditures, but further, that it is the better rule in all cases to do so. Furthermore, in the instant case the sum asked for expenditures for the ward might well be considered as needed only for ordinary expenses, since it is shown by the proof—a fact which we know from current history—that the expenses of living are now extraordinarily high, and the small amount of $58.75 can not be considered under present conditions as an excessive allowance for the support and education of the ward and to maintain him in the way and manner in which he should be reared. We therefore conclude that the court had the authority to direct the guardian to expend the present income of the ward for the purposes indicated, and the judgment so directing was correct. That judgment, according to its terms, is subject to modification at any time, to be governed by the changed circumstances.

Wherefore, the judgment appealed from in its entirety is affirmed.