28850.   PETTIGREW *v.* WILLIAMS, guardian.

Decided July 16, 1941.  Rehearing denied July 30, 1941.

582

*Jesse J. Gainey, Steve M. Watkins,* for plaintiff in error.

*Alexander & Jones, Farkas & Burt,* contra.

STEPHENS, P. J. (After stating the foregoing facts.) ■ The defendant in error contends that the bill of exceptions should be dismissed on the ground that it contains no valid assignment of error, and that the rule as to assignments of error in a direct bill of exceptions applies in view of the fact that the verdict was demanded by the evidence and the only alleged errors insisted on are the disallowance of the plaintiff's amendments and the sustaining of the general demurrers thereto, and it does not appear in the bill of exceptions that the "verdict necessarily has been controlled by" such antecedent rulings. Code, § 6-804; *McRae* v. *Boykin, 50 Ga. App.* 866, 868 (179 S. E. 535). This contention is without merit. The judgment disallowing the amendments and sustaining the demurrers thereto was rendered October 22, 1940. The case proceeded to trial on the petition of the plaintiff for a settlement and accounting and the answer of the guardian thereto, in which answer the guardian set up the annual returns made by her as guardian as her response to the application for an accounting. The amendments in which the plaintiff attacked those returns having been disallowed the plaintiff offered no evidence, and the guardian introduced such returns in evidence, whereupon the court directed a verdict for the guardian based on such annual returns. The verdict and judgment were rendered on October 22, 1940. On the same day the plaintiff filed a motion for new trial, and on October 30, 1940, this motion was overruled. A bill of exceptions was sued out on November 16, 1940, certified by the court, and service thereof acknowledged that day. This bill of exceptions was filed in the office of the clerk on November 18, 1940. In the bill of exceptions the plaintiff assigned error on the orders disallowing the amendments and sustaining the defendant's demurrers and objections to their allowance "because the petitioner was entitled, as a matter of law, to plead and prove before the jury upon the trial of said case the facts alleged in said amendments for the purpose of rebutting and disproving the alleged expenditures and charges shown on said annual returns as charged against petitioner, and to show the incorrectness of these expenditures and charges as against her and

her estate, and because by the allowance of said amendments the legal effect was to preclude and prevent petitioner from introducing evidence in the trial of said case to prove any of the facts as alleged in said amendments." The plaintiff likewise assigned error on the verdict and judgment "because of the errors that had previously been made in the case in disallowing petitioner's amendments; those errors make all that happened thereafter nugatory; and because by the disallowance of her amendments the legal effect was to preclude and prevent her from introducing any evidence in the trial of said case to prove any of the facts as alleged in said amendments; and because said verdict and judgment were contrary to law and the principles of justice and equity." The plaintiff assigned error also on the order of the court overruling the motion for new trial "because of the errors that had previously been made in the case in disallowing petitioner's amendments, those errors making all that happened thereafter nugatory; and because by the disallowance of her amendments the legal effect was to preclude and prevent her from introducing any evidence on the trial of said case to prove any of the facts as alleged in said amendments; and because said judgment was contrary to law and the principles of equity and justice." The bill of exceptions was signed, certified, and filed within thirty days from the date of the order disallowing the amendments and sustaining the demurrers thereto, as well as within thirty days from the date of the verdict and judgment, and also within thirty days from the date of the order overruling the motion for new trial. No exceptions pendente lite were needed and none were filed. It is true that the plaintiff's case is predicated on the amendments and the subject-matter thereof, and that without such subject-matter the verdict in favor of the annual returns of the guardian was demanded under the evidence. Therefore the alleged error really complained of is the disallowance of the amendments. However, it is our opinion that in view of the foregoing facts the bill of exceptions is not subject to be dismissed because, as contended by the defendant in error, it is a direct bill of exceptions under Code, § 6-804, and it does not appear therein that the alleged antecedent error complained of necessarily controlled the final judgment. The motion to dismiss is denied.

■■■■ This is a case involving an application by a ward to the court of ordinary for citation to issue against her guardian,

who was the ward's mother, to appear and submit to a settlement of her accounts. The ward sought to amend such application, and these amendments were disallowed and the demurrers of the guardian thereto were sustained. In the petition and proffered amendments the returns of the guardian were attacked as not being true, as containing improper charges against the ward's estate, as being illegal and fraudulent, and as not being sufficient in that there were not attached thereto proper receipts and vouchers showing certain alleged expenditures. The ward attacked two of the annual returns on the ground that the original returns do not show any order of the ordinary approving them, in that there is no actual order of approval by the ordinary on the original returns, although the record of such returns appearing in the annual return book of the ordinary shows an order approving such returns and admitting them to record. It is alleged that there is not a true and correct record of the original returns for this reason, and that "such erroneous record of said return and order should be disapproved as erroneous, so that no exemplified copy of such record may ever be used at any time anywhere." It is contended by the guardian that such returns are binding on the ward, and that the petition and offered amendments failed to set forth a cause of action or state wherein the returns were illegal, and failed to sufficiently specify the grounds of attack on such returns. In addition the guardian contends that the ward has not shown proper diligence in discovering or attempting to discover the facts on which she relies to annul the judgment of the court of ordinary in the matter, and is barred by her own laches and neglect and by the statute of limitations from attacking the returns and objecting to the items charged by the guardian therein to the estate of the ward. It is contended therefore that these returns, having been approved by the ordinary, are now binding on the ward.

The ward is not barred by the statute of limitations in seeking an accounting and settlement with her guardian, although the application or petition therefor was instituted approximately eight years and three months after the ward attained her majority. A ward, when arriving at majority, may apply to the ordinary for an order requiring her guardian to appear and submit to a settlement of her accounts. Code, § 49-301. For the purpose of settlement of accounts between the guardian and the ward the relationship of

guardian and ward does not terminate when the ward reaches majority. *Morgan* v. *Woods,* 69 *Ga.* 599. All actions against guardians, except on their bonds, shall be brought within ten years after the right of action accrues. Code, § 3-709. See *Hartley* v. *Head,* 71 *Ga.* 95; *Lane* v. *Lane,* 87 *Ga.* 268 (13 S. E. 335). The provisions of the Code, § 49-312, are not applicable here. There had been no final settlement in this case, and therefore no attempt is here made to reopen a final settlement. The application here is for an accounting and settlement under the Code, § 49-301, and an attack is made on certain expenditures by the guardian and contained in the annual returns filed by her as charges against the ward's estate. Code § 3-709 rather than § 49-312 is applicable. Nor is the ward barred by neglect and laches. It is alleged in the second of the disallowed amendments that the ward "obtained her first knowledge that such returns were of file in the court of ordinary on or about June 15, 1940; that she had been told by the guardian and her attorney . . that no settlement could be made with her until her youngest brother and sister who were also wards of the guardian and who are not yet of age, became of age, and the petitioner was thereby induced to make no investigation and take no action seeking a settlement with the guardian." In the view we take of this case it is unnecessary to decide whether there has been a judgment of the ordinary approving the annual returns of the guardian. Even though such returns had been approved by a proper order it has been held that in an application for settlement the annual returns of a guardian, allowed by the ordinary, are only prima facie evidence of the correctness thereof, and that in an application for a settlement they may be attacked by the ward, the burden being on the ward to impeach them. *Brown* v. *Wright,* 5 *Ga.* 29; *Rolfe* v. *Rolfe,* 15 *Ga.* 451 (3); *Dillon* v. *Sills,* 54 *Ga. App.* 299 (187 S. E. 725), and cit. The law is very jealous of the rights and interests of wards, and seeks rigidly to guard them. The judgment of the ordinary approving the returns was not a binding judgment, and did not conclude the ward from attacking the items and impeaching the verity thereof or from questioning the legality of the charges made against the corpus of her estate.

"Pleading which attacks the returns made by a guardian to the court of ordinary which has been examined and allowed by the court, should point out specifically the items of the returns on

which the attack is made, and as to each should disclose the cause or ground of the attack. It is not enough to allege that the return for such and such a year is unlawful as to a specific amount, without pointing out the items alleged to be unlawful, and without stating in what the unlawfulness consists." *Bonner* v. *Evans,* 89 *Ga.* 656 (15 S. E. 906). The disallowed amendments in the case at bar point out specifically the items of the returns alleged by the ward to be unlawful and to have been improper charges against the ward's estate. The ward specifically attacks certain items of the returns, and points out specifically wherein the items attacked constituted improper charges against the estate. The ward also attacks certain items by specifically attacking certain purported vouchers or receipts attached thereto. The two disallowed amendments were not subject to demurrer on the ground that they failed to "state wherein the returns or the charges are illegal or unlawful."

The ward attacks the returns on the grounds that the money therein claimed to have been spent for maintenance and education was not in fact so spent; that such returns are not accompanied by valid vouchers showing the expenditure of such money for the maintenance and education of the ward; and because the purported vouchers accompanying such returns are not evidence to show such expenditures for the reason that they appear to be made as receipts to the guardian and signed by the guardian. It is alleged that the returns were not filed until many months after the alleged expenditures from the corpus of the estate for the maintenance and education of the ward, and that all vouchers for such expenditures were made by the guardian as receipts to herself "without any original account or record of such expenditures to authorize or support same." In *Hendry* v. *Hurst,* 22 *Ga.* 312, in which there was an attack on a guardian's returns made by caveat to the allowance and admission to record by the ordinary thereof, the Supreme Court held: "In all cases the guardian making his return should lay his account before the ordinary, plainly setting forth, with sufficient certainty, his charges against his ward. This account is the case he should prove. The vouchers are his evidence to support it. . . The vouchers . . are entitled to no weight as evidence, on the score that, . . the ordinary allowed them." In that case, which involved charges made by the guardian for clothing, school-

ing, tuition, and boarding of the ward, the court said: "Guardians should keep accurate accounts and make regular returns, and in all cases where they do not, and are unable to prove the actual amount paid under the above rule, they ought to be restricted to the lowest amount the law would authorize them to charge. The guardian's own receipt to himself, furnishes not the slightest evidence of this. It is his own bare statement in his own behalf which is inadmissible. He ought to prove the furnishing, and a quantum meruit (if unable to prove the actual amount paid) and that the circumstances of the ward justified the charges." The ward was entitled to evidence as to the amount actually expended by the guardian for her support and education. The ward was entitled to full information on this subject. She was entitled to be shown the condition of the estate. *Steadham* v. *Sims,* 68 *Ga.* 741. "It shall be the duty of . . guardians . . to keep their accounts in a regular manner, and to be always ready with them supported by proper vouchers." Code, § 4-211. And see *Dowling* v. *Feeley,* 72 *Ga.* 557, 567; *Poullain* v. *Poullain,* 76 *Ga.* 420 (5 *a*) 446. While ordinarily one attacking a return of a guardian has the burden to impeach its correctness (*Peavy* v. *Clemons,* 10 *Ga. App.* 507, 73 S. E. 756), the burden of proof is on the guardian to show a compliance with this section. See *Dodge* v. *Hatchett,* 118 *Ga.* 883, 884 (45 S. E. 667). The approval of the returns by the ordinary made when the ward was an infant and unable to question the legality and accuracy of such returns and of the expenditures charged against her estate, is not intended to mean a final, conclusive judgment, but only a judgment de bene esse. *Crawford* v. *Clark,* 110 *Ga.* 729 (36 S. E. 404). Such purported vouchers or receipts are not alone sufficient to constitute conclusive evidence that such expenditures were made. Their approval by the ordinary being prima facie only, an attack by the ward, on discovering after reaching majority that such expenditures were not made and that there were not proper vouchers attached to the items of the returns including such expenditures, is not subject to dismissal on general demurrer. See *Hudson* v. *Hawkins,* 79 *Ga.* 274 (4 S. E. 682); *Dowling* v. *Feeley,* supra; Code, § 49-230.

Primarily the duty to support, maintain, and educate the children rests on the father. *Robison* v. *Robison,* 29 *Ga. App.* 521 (116 S. E. 19); *Starke* v. *Hamilton,* 149 *Ga.* 227 (99 S. E. 861, 5 A. L. R.

1041) ; Code, § 74-105. But the father's duty to furnish support ceases on his death (Rice v. Andrews, 127 Misc. 826, 217 N. Y. Supp. 528), and thereafter the duty to support the children devolves upon the mother. *Thompson* v. *Georgia Railroad &c. Co.*, 163 *Ga.* 598 (136 S. E. 895). This, however, is subject to certain limitations that were not applicable in the case of the father. Parents are legally bound to provide for the support of their children during infancy though the children have estates of their own, unless the parents have no means or their estates are limited and the children have incomes ample for their support. First National Bank v. Greene (Ky.), 114 S. W. 322; Wing v. Hibbert, 8 Oh. S. & C. P. 65, 7 Oh. N. P. 124; Hamilton v. Riney, 140 Ky. 476 (131 S. W. 287). It has been held that where the mother, having the custody and control of her minor children after the father's death, has abundant means to provide for them, she can not resort to their estate for their maintenance and support. And this rule has been held especially applicable where reimbursement is sought for past support. Welch v. Burris, 29 Iowa, 186. However, where the circumstances of a parent are such that the parent is not financially able properly to support and educate the children an allowance for that purpose may be made from the children's estate; but in the application of this rule the courts state that regard should be had to the circumstances of the particular case, and such allowance to the parent may, in a proper case, be made either as a provision for the future or as a reimbursement for past expenditures. Fuller v. Fuller, 23 Fla. 236 (2 So. 426) ; Com. v. Lee, 120 Ky. 433 (86 S. W. 990, 89 S. W. 731, 27 Ky. L. 806, 28 Ky. L. 596). It has been held that since there is imposed on parents the natural duty to support and maintain their children, they may not, as guardians for them, be allowed anything out of the children's separate estates for such purposes, unless the parent is in such needy financial circumstances that he is unable to properly furnish such support and maintenance. See Watson v. Watson, 183 Ky. 516 (209 S. W. 524, 3 A. L. R. 1575). In Ellis v. Soper, 111 Iowa, 631 (82 N. W. 1041), it was held that a widow who is guardian for her children is primarily liable for their support. In Welch v. Burris, 29 Iowa, 186, it was held that an order of allowance to the mother for past support will be made only under special circumstances which must appear in the application therefor.

Therefore the law is that parents are legally bound to provide for the support and education of their children during infancy, and that where a mother on the death of the father has the support and custody of minor children, and is appointed their guardian, she is charged with the duty to provide the necessaries of life for the children. The mother, as guardian, would be entitled to reimbursement for expenditures made by her for such support and maintenance, or to pay directly therefor out of a separate estate inherited by such children, *only* where it appeared that the mother was in such financial circumstances that she was unable to provide such support and maintenance and that the children's separate estate was abundantly sufficient for that purpose and that she so applied it.

The ward in this case charges that she lived at home with her mother; that there was no actual charge made against her for the items represented in the returns; that there were no actual expenditures made out of her estate therefor; that there were no such amounts spent by the guardian for her benefit; and that the items in such returns were made up to conceal the fact that the money therein represented had been lost or wasted in "some other manner unknown to" the ward.

*Brown* v. *McWilliams*, 29 *Ga.* 194, is clearly distinguishable from the case at bar. The court in that case did not, as contended by the guardian, approve as a correct statement of the law the charge of the trial judge that "when a father is guardian of his infant children who have a separate estate or property, the law will allow him to appropriate the income of such estate, or so much as may be necessary to the support and education of the children, notwithstanding he may be able to support and educate them out of his own property." The *Brown* case involved a bill in equity to reopen a settlement by a father, as guardian of his two daughters, made with their husbands. It appeared that the father was of limited means. The bill was filed seven or eight years after settlement with one daughter and seventeen years after settlement with the other, and the court held that "under all the facts of the case" a court of equity would not disturb the verdict of the jury which was in favor of the father. The court, in rendering the decision, stated in the opinion that it appeared that the court of ordinary, acting with full knowledge of the father's circumstances, passed an order authorizing him to retain the interest from the legacy received by

the children from their grandfather "to aid him in the support and maintenance of his wards," and "that order stands unreversed." The court then held that the complainants "with a full knowledge of the facts [on the part of one, if not both of them] settled with their father," one seventeen years and the other seven or eight years before the filing of the bill in equity, and that "being satisfied that the arrangement made between the court of ordinary and the guardian was a reasonable one, we are unwilling to interfere with it, especially after such a lapse of time." The court, speaking through Judge Lumpkin, said: "It was bad enough for these sons-in-law to rob the father of his daughters against his consent. It would be still worse to allow them to harass his old age, under the circumstances of this case, at this distant day." In the *Brown* case the Supreme Court was dealing with a petition to reopen a final settlement made by the guardian with his wards. In the case at bar the ward is seeking an accounting and final settlement with her mother as guardian and is attacking certain expenditures charged to the estate in her annual returns. The law as to the two proceedings is not the same. As we have seen, entirely different Code sections apply. As to a petition to reopen a final settlement the provisions of Code, § 49-312, that "No final settlement made between guardian and ward shall bar the ward, at any time within four years thereafter, from calling the guardian to a settlement of his accounts, unless it shall be made to appear that the same was made after a full exhibit of all the guardian's accounts and with a full knowledge by the ward of his legal rights," control, while the case at bar is brought under Code, § 49-301.

Applying the above principles the court erred in disallowing the amendments offered by the ward and in sustaining the demurrers thereto. This rendered nugatory all subsequent proceedings.

*Judgment reversed. Sutton and Felton, JJ., concur.*